STATE, Respondent, v. ASFOOR, Appellant.

*No. 75-511-CR. Argued November 4, 1976.—*
*January 18, 1977.*
(Also reported in 249 N. W. 2d 529.)

---

[10] *Lock v. State,* 31 Wis.2d 110, 142 N.W.2d 183 (1966); *Jones (George Michael) v. State,* 70 Wis.2d 41, 233 N.W.2d 430 (1975).

412

414

416

418

For the appellant there were briefs and oral argument by *Patrick R. Doyle* of La Crosse.

For the respondent the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. The defendant has raised a multitude of issues. The pertinent facts the jury could accept, disputed in some detail, are as follows:

On September 24 and 25, 1974, Bernard Kutil and Hope Olson, both former La Crosse residents, were staying at the Holiday Inn in La Crosse. Kutil invited David Layland to a party at the motel. Layland and Kutil were involved in a fist fight and Layland was quite severely beaten. Layland left and returned with Anthony Schubert. Another fight took place and Kutil again beat Layland and Schubert. Schubert left without Layland in Layland's car, stating he would be back. Schubert proceeded to the apartment of the defendant, Ronald Asfoor. His purpose was "to get some more people and do some hostile damage to Mr. Kutil." Andrew Jewell and the defendant's girlfriend were with the defendant when Schubert arrived. Schubert told Jewell he "wanted to see [Kutil] get shot." Defendant Asfoor was standing

"close by" when the statement was made. Initially Asfoor seemed "quite nervous" about this plan, but he "agreed to go with it" and "agreed to drive . . . over there." Jewell went into another room and got a shotgun and .357 Magnum pistol and took them outside to Asfoor's car. Jewell placed the shotgun in the back seat of Asfoor's 1972 White Cadillac convertible and Schubert took the holstered handgun from Jewell. Asfoor followed Jewell and Schubert as they left the apartment. When all three were in the car the defendant took the handgun from Schubert and placed it on the floorboard.

Defendant Asfoor drove the car to the Holiday Inn. When the three arrived, Kutil came out onto the balcony adjoining the room in which he was staying. Asfoor got out of the car and asked, "Is that the smart, . . . punk?" Schubert got out of the driver's side of the car and Jewell got out on the passenger side. Jewell had the shotgun in his hands and was removing it from the case. Kutil jumped from the second floor balcony and began moving toward the threesome. Schubert then went back into the car to get the handgun. Schubert moved toward Kutil and Jewell with the handgun pointing at Kutil. Asfoor then forceably disarmed Schubert and was returning to the car when Jewell shot Kutil. Kutil was struck by thirty-three shotgun pellets in his right leg, three in his left leg and one in his left wrist. He continued moving toward the threesome and another fight ensued. Prior to the arrival of the La Crosse police, Jewell, Schubert and Asfoor agreed that they would tell the police that they found Kutil going through Asfoor's car. When the police arrived Jewell recited the concocted story and Asfoor agreed by nodding his head and saying "yes." The police took the shotgun out of the back seat and asked Asfoor whether there were any other guns in the car. Asfoor said there were and was instructed to give them to the police. He reached under the right front seat and re-

moved a bowie knife which he gave the police. He then removed a holster from the same place and finally, from the same place, removed the .357 Magnum handgun. Prior to taking the handgun out from underneath the seat he removed the cartridges. Asfoor, Schubert and Jewell were arrested.

A complaint was issued on September 25, 1974. In addition to the aforementioned charges of carrying a concealed weapon and party to the crime of injury by negligent use of a firearm, the complaint charged Asfoor with party to the crime of injury by conduct regardless of life, a violation of secs. 940.23 and 939.05, Stats. An information was filed on October 2, 1974.

On January 17, 1975, the newly elected district attorney moved that the counts charging party to the crimes of injury by negligent use of a firearm and conduct regardless of life be dismissed. The trial judge noted that the district attorney was moving to dismiss the felony charges and retain only the misdemeanor. After a discussion on the record where the judge pointed out he strongly disagreed with the motion to dismiss, it was granted. The judge stated he would bet his "bottom dollar that a jury would find guilt," and that the defendant knew full well if he got before a jury "he was probably in trouble." Subsequent to the dismissal, it became known that Asfoor and members of his family had contributed to the district attorney's election compaign fund. This issue received editorial and front page coverage in the La Crosse papers. Because of the publicity and the possible conflict of interest, the district attorney requested that a special prosecutor be appointed. A special prosecutor was appointed and at the same time the court, sua sponte, ordered that the dismissal of the two charges be vacated. The court stated that if the special prosecutor believed these two counts should be dismissed he could bring such a motion and it would be granted. The defense attorney maintained that the court lost

jurisdiction as to these counts when the motion for dismissal was granted, and if they were to be reissued it would have to be by the county court. A motion for change of venue was granted. Subsequently, after reviewing the charges, the district attorney pro tem decided that the charge as to party to the crime of injury by conduct regardless of life should be dismissed. This motion was granted.

The evidence was somewhat conflicting concerning what occurred prior to the shooting. Anthony Schubert was given immunity and was called by the state; however, the defense confronted him with prior inconsistent statements. Schubert also testified that Asfoor threatened to beat him up if he testified against Asfoor. On May 15, 1975, the jury found Asfoor guilty of both charges. Postconviction motions were made and denied. The defendant was sentenced to one year in the Wisconsin State Prison on the negligent shooting charge and six months in the county jail concurrently on the concealed weapons charge. The sentence was stayed pending appeal.

The defendant presents fourteen issues which he contends are grounds for reversal. We have rephrased them to some degree and view them as eight issues:

1. Whether the trial court lost jurisdiction over the charge of injury by negligent use of a weapon when it dismissed it.

2. Whether the complaint stated probable cause to support the charges of injury by negligent use of a weapon and going armed with a concealed weapon.

3. Whether the crime of injury by negligent use of a weapon committed by intentionally aiding and abetting requires specific intent and whether this is a crime known to law.

4. Whether there was error in the submission of jury instructions concerning both charges.

5. Whether the evidence was sufficient to support a finding of guilt.

6. Whether secs. 940.24(1) and 941.23(1), Stats., as applied, are vague, overbroad and indefinite and therefore unconstitutional.

7. Whether the trial judge was biased.

8. Whether the sentence classification of secs. 940.24 and 940.08, Stats., is a deprivation of equal protection of the laws.

The defendant contends that the trial court lost its jurisdiction over the sec. 940.24(1), Stats., charge, injury by negligent use of a weapon, when it dismissed it on January 17, 1975. In support of this argument he cites 22 C.J.S., *Criminal Law*, sec. 165. The following quote from that section is helpful:

> "As a general rule the jurisdiction of a court depends on the state of facts existing at the time it is invoked, and once jurisdiction of the person and subject matter attaches it continues until final disposition or determination of the case in the mode prescribed by law." *Id.* at 422.

■ ■ Once jurisdiction has attached it continues until final disposition. The dismissal by the circuit judge of two of the three counts in the information was not the final disposition. Jeopardy had not attached.[1] The dismissal was without prejudice and the charges could be reinstated. The circuit court had subject-matter jurisdiction as to the original charges. Wis. Const., art. VII, sec. 8. It had the power to determine the facts and apply the

---

[1] "972.07 *Jeopardy.* Jeopardy attaches:

"(1) In a trial to the court without a jury when a witness is sworn;

"(2) In a jury trial when the selection of the jury has been completed and the jury sworn."

law.[2] The court also had personal jurisdiction over the defendant because it had not dismissed all of the charges against him. After the dismissal, Asfoor still remained personally before the court.[3] Because the court had personal jurisdiction over the defendant and had subject-matter jurisdiction as to all the charges, it had the power to vacate its order dismissing the charges. The trial court had both personal and subject-matter jurisdiction.

■ A more appropriate question is whether the court erred in vacating the dismissal. The district attorney brought the motion before the court seeking the appointment of a special prosecutor. Because of a possible conflict of interest, it was recognized that a special prosecutor was appropriate. In appointing the special prosecutor the trial court also reinstated the original charges. In effect, the court was putting the case in the posture it had been before actions possibly influenced by a conflict of interest arose. The court did not initiate any charges, it merely reinstated those issued by the first district attorney involved in the case. At the hearing where a special prosecutor was appointed the district attorney was present and did not oppose the vacation of the order dismissing the charges. Not only did the court have jurisdiction to act but its actions were entirely appropriate under the circumstances of the case.

■ It is also argued that in vacating the order dismissing the charges the trial court failed to recognize the discretion of the prosecutor. The record does not bear out this contention. The trial court recognized the prosecutor's discretion: First, it dismissed the charges on motion of the district attorney, although he strongly disagreed with

[2] See: Waite v. State, 57 Wis.2d 218, 226, 203 N.W.2d 719, 723 (1973); Kelley v. State, 54 Wis.2d 475, 479, 195 N.W.2d 457, 459 (1972).

[3] See: State v. Chabonian, 55 Wis.2d 723, 726, 201 N.W.2d 25, 26 (1972).

the dismissal. Second, when vacating the order dismissing the charges the trial court specifically stated that if the new prosecutor thought these charges ought to be dismissed he could make such a motion and the trial court would grant it. Third, when the special prosecutor moved to dismiss the charge of party to the crime of injury by conduct regardless of life, the court granted the motion. At all stages the court recognized prosecutorial discretion of the district attorney.

The defendant next argues that the complaint failed to state probable cause to support jurisdiction of the court under the fourth amendment. As the state notes, the fourth amendment concerns unreasonable searches and seizures and probable cause for the issuance of warrants. The arrest in this case was warrantless and there was no search. The arrest was not challenged, and at first glance this argument seems to be a non sequitur. However, the defendant did challenge the complaint on the basis that probable cause was not shown. It is not entirely clear from the record, but it appears that the motion challenging the complaint was made prior to the preliminary examination. Sec. 971.31(5)(c), Stats., requires that this motion be made prior to the preliminary. Thus, the issue was preserved.

██ The complaint issued subsequent to a valid arrest must meet probable cause requirements. *State ex rel. Cullen v. Ceci,* 45 Wis.2d 432, 442, 173 N.W.2d 175, 179 (1970).

"While its purpose is no longer to authorize the seizure of the person of the defendant, it is the jurisdictional requirement for holding a defendant for a preliminary examination or other proceedings. The face of the complaint and any affidavits annexed thereto must recite probable cause for defendant's detention." *Id.* at 442–43, 173 N.W.2d at 179.

█ In this case the complaint answered the essential queries expected of it. The complaint made it clear to the defendant "that he is charged with a crime, what the

crime is, when and where the offense is alleged to have taken place, why he is believed to have committed the [crime] and who said so." *State ex rel. Evanow v. Seraphim*, 40 Wis.2d 223, 230, 161 N.W.2d 369, 372 (1968). The defendant knew that he was being charged with injury by negligent use of a weapon and going armed with a concealed weapon. The complaint answered all the above-mentioned "essential questions" which this court laid down as a requisite for a sufficient complaint in *State ex rel. Evanow v. Seraphim, supra.* The complaint stated probable cause to believe that a crime had been committed and was sufficient.

■ Asfoor was charged with intentionally aiding and abetting the commission of the crime of injury by negligent use of a weapon. The elements of aiding and abetting are that a person:

"(1) [U]ndertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance." *Hawpetoss v. State*, 52 Wis.2d 71, 78, 187 N.W.2d 823, 826 (1971); *State v. Nutley*, 24 Wis.2d 527, 555, 129 N.W.2d 155, 157 (1964), *cert. denied*, 380 U.S. 918.

The defendant makes two arguments relating to this charge. The first is that the intent of the aiding and abetting section of the party to a crime statute must be specific intent. The second is that the crime of injury by negligent use of a weapon by aiding and abetting is unknown to the law.

■ The essence of the first argument is that an aider and abettor cannot be guilty unless it is shown that the crime which was committed was the specific crime which the aider or abettor intended be committed. This argument is refuted by *State v. Cydzik*, 60 Wis.2d 683, 211 N.W.2d 421 (1973). Cydzik, argued that he could not be guilty of aiding and abetting first degree murder because

" '[e]very act, every move that [he] made that evening was connected to the robbery, and not to the murder.' " *Id.* at 696, 211 N.W.2d 429. This court recognized that in a limited and literal concept of intending it was true that there was only intent to participate in the robbery. But it also recognized that one who drives a getaway car in an armed robbery is presumed to intend the natural consequences of his act. Cydzik began his participation intending an armed robbery, but was held to intend the murder which occurred during the robbery. His overt acts demonstrated that he was willing to assist in the robbery and whatever it entailed. He intended the murder and was responsible as an aider and abettor. The same can be said of Asfoor. He intended his acts; knowing his friends' plans to do "hostile damage" to the victim, he voluntarily drove the car to the Holiday Inn. His acts demonstrated that if assistance became necessary in the commission of a crime he was ready to provide it. In fact, he did provide assistance by allowing the use of one of his guns and by driving Schubert and Jewell to the motel. Without his assistance the crime could not have taken place. When he set out he aided his companions and must be held responsible for the natural consequences of his act. Using the metaphor of this court in *Cydzik,* Asfoor was not "sitting on the bench. . . . He was in the game, . . . playing a position .or performing a function as to the commission" of the crime. *Id.* at 699, 211 N.W.2d at 430.

It is also argued that it is impossible to intend the crime of negligent injury by use of a weapon. It is true that intent and negligence are mutually exclusive and one cannot intend to injure someone by negligent conduct. However, there are often many intentional acts which lead to an injury caused by negligence. For example, the negligent driver of a car involved in a head-on collision intended to drive his automobile. He also intended to pass the slow moving vehicle in front of him, but he did

not intend to hit the oncoming car. His intentional acts would not prevent him from being found negligent if he failed to exercise proper lookout or was driving too fast. The same is true of Asfoor. He consciously agreed to aid his companions when he knew they were planning a crime. He took overt actions to further their conduct. He intended to place the handgun on the floorboard of the car. He was conscious that the shotgun was in the back seat. He in fact did intentionally aid and abet the actions of his companions. All these intentional acts led to an injury when one of those he aided acted negligently while using a weapon. Asfoor, like Cydzik, is responsible for the natural consequences of his acts. He intended to participate in the manner he did and these acts aided and abetted. Jewell did injure the victim by negligent use of a weapon. There is no allegation that there was intent to injure Bernard Kutil. If there was, Asfoor would have faced more serious charges. In the eyes of the law, Asfoor was a principal in the commission of the acts of the crime of injury by negligent use of a weapon. He was a principal through his aiding and abetting. Sec. 939.05, Stats.[4]

---

[4] "939.05 *Parties to crime.* (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply

The defendant makes three arguments concerning jury instructions. The first two deal with the injury by negligent use of a weapon charge, while the third relates to going armed with a weapon. In instructing the jury the trial court added an instruction which counsel had not submitted.[5] This instruction was given as a supplement to the standard instruction on a party to a crime, aiding and abetting, Wis J I—Criminal, Part I, 400A. It is claimed that the instruction was improper because it did not require the jury to find that the defendant actually planned and intended to aid the specific crime charged. Asfoor contends that under sec. 939.05, Stats., only a conspirator or a solicitor—not an aider and abettor—can be held liable for a crime other than the intended crime. We disagree.

In *State v. Cydzik, supra,* we indicated clearly that one who intentionally aids and abets the commission of a crime is responsible not only for the intended crime, if it is in fact committed, but as well for other crimes which are committed as a natural and probable consequence of the intended criminal acts. Liability of this character is not limited to conspirators. Under well established law:

---

to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

[5] The instruction was as follows: "If you are convinced beyond a reasonable doubt that the defendant Ronald Asfoor knowingly transported Andrew Jewell and Anthony Schubert from the Asfoor apartment to the Holiday Inn on September 25, 1974, with the knowledge or belief that Jewell and Schubert or either of them intended to commit some crime, and are further convinced beyond a reasonable doubt that Jewell thereafter actually committed a crime, then the defendant Asfoor was an aider and abettor in the commission of such crime."

"One may aid or abet in the commission of a crime without having previously entered into a conspiracy to commit it. . . . Moreover, the aider and abettor in a proper case is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged. Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury."[6]

Although it may be admitted that the words of sec. 939.05, Stats., would bear Asfoor's construction, we find in the statute no sufficiently clear intent to overturn long and widely accepted law, and the legislative history of the statute confirms that no such result was intended.[7]

[6] *People v. Durham*, 70 Cal.2d 171, 181, 74 Cal. Rptr. 262, 268, 449 P.2d 198, 204 (1969), *cert. den.* 395 U.S. 968, and 406 U.S. 971 [citations omitted]. *See also United States v. Heinlein*, 490 F.2d 725, 735–36 (D.C. Cir. 1973); *State v. Norris*, 6 Terry 267, 271, 71 A.2d 755, 757 (Del. 1950); *Davis v. State*, 275 So.2d 575, 578 (Fla. 1973); *People v. Hughes*, 26 Ill.2d 114, 119, 185 N.E.2d 834, 837 (1962); *State v. Kneedy*, 232 Iowa 21, 28–30, 3 N.W.2d 611, 615–616 (1942); *State v. Chernick*, 278 S.W.2d 741, 746 (Mo. 1955); 1 *Wharton's Criminal Law & Procedure*, sec. 114, p. 247 (Anderson ed. 1957). The liability of an aider/abettor is not without limits, of course, nor is this concept of liability as broad as that of conspiracy. *See United States v. Greer*, 467 F.2d 1064, 1068–71 (7th Cir. 1972).

[7] *See* Judicial Committee Report on the Criminal Code (Wisconsin Legislative Council, 1953), at pp. 4–6. With respect to sec. 939.05(2)(b) the Committee's comment provides:

"Paragraph (b) covers those who assist in the commission of the crime. The term 'aids and abets' is a phrase of art which covers assistance which is rendered by words, acts, encouragement or support. It even includes presence, whether actual or constructive, if the person is present for the purpose of rendering assistance if necessary. See Black's Law Dictionary and cases cited therein. Although the term 'aid and abet' has always been construed to mean assistance with knowledge that the actor is aiding and abetting in the production of a criminal result, 'intentionally' was added to emphasize this fact."

 The jury therefore properly could have been instructed that Asfoor's responsibility as an aider and abettor extended to the natural and probable consequences of the crime he actually planned to aid—here battery, at the least (sec. 940.20, Stats.). The instruction actually given went beyond this, in that it did not incorporate the limitation that Jewell's crime, the negligent shooting of Kutil, must have been a natural and probable consequence of the planned crime. This was error. Under the circumstances, however, we think there was no possibility that had a proper instruction been given the result of the trial would have been different. Kutil earlier in the evening had amply demonstrated his willingness to put up a fight if confronted. Knowing this, Asfoor and the others, while carrying firearms, set out to give Kutil the thrashing they felt he deserved. If an accidental gunshot wound was not a natural, probable consequence of this course of action, it is difficult to imagine the circumstances in which it would be. The error in the instruction here was harmless.

 The trial court, as required by *State v. Simpson,* 56 Wis.2d 27, 201 N.W.2d 558 (1972), and sec. 972.10 (5), Stats., did inform counsel of the instructions it planned to give the jury prior to their delivery and also prior to jury argument. Asfoor was unaware the instruction on general intent was going to be given. He argues that the submission of this instruction, without his foreknowledge, deprived him of due process and his sixth amendment right to a fair trial. The court added this instruction because of its belief that counsel had misstated the law as to the requisite intent necessary to aiding and abetting. It is within the trial court's discretion to supplement instructions in order to prevent the jury from being misled by the closing arguments of counsel.[8] The addi-

---

[8] *United States v. Clarke,* 468 F.2d 890, 892 (5th Cir. 1972).

tion of this instruction conforms with ABA Standards, *Trial by Jury*, sec. 4.6(a) (1968), which states in part:

"Counsel and the court should nonetheless remain responsible for ensuring that the jury is adequately instructed as dictated by the needs of the individual case, *and to that end should modify and supplement the pattern instructions whenever necessary.*" (Emphasis supplied.)

■ A pattern instruction had been agreed upon but because of erroneous argument of counsel the court had to supplement this instruction. Counsel had submitted instructions concerning his theory of necessity of specific intent and these had been rejected by the court. In spite of this he went ahead and made his argument concerning specific intent to the jury. He should not have been surprised that the judge corrected the misstatement and cannot now fairly cry "foul."

■ The defendant also argues that the court erred in refusing to give the jury instruction he submitted on going armed with a concealed weapon. The instruction submitted by the court was Wis J I—Criminal, 1335. The court stated that the weapon must have been concealed. The word "concealed" has a plain meaning but the court clarified the meaning for the jury by stating "[i]f a weapon is hidden from ordinary observation then it is concealed." "It was the defense theory of the case that any concealment was inadvertent . . . , that the gun was not such as to be available for immediate use. . . ." This theory was covered by the instruction given. If the jury thought the gun was placed under the seat inadvertently, it presumably would not have convicted. Concealing or hiding a weapon precludes inadvertence. When the court explained what "going armed" meant, it used language of this court in *Mularkey v. State*, 201 Wis. 429, 432, 230 N.W. 76, 77 (1930). It stated that "going armed" meant that the weapon was on the defendant's person or

that the weapon must have been within the defendant's reach and that the defendant was aware of the presence of the weapon. The defendant's instruction that the weapon must be available for immediate use and that one must either know or intend it to be available for immediate use would have only confused the issue. The court's instructions were a correct statement of the law.

Asfoor argues that because "negligence cannot be intended in advance" it must be shown that "the defendant did something to aid the perpetrator while the crime was happening." The focal point of the defendant's activities need not be so narrow. While Asfoor may have done nothing to aid Jewell at the instant the crime was committed, he had earlier acted in such a way as to assist Jewell. Various intentional acts may lead to an unintentional injury caused by negligence. The question is whether the defendant's acts were a proximate cause of the victim's injuries. This is a question for the jury. The defendant did disarm one of his companions while another shot Bernard Kutil, but earlier the defendant drove Jewell to the motel, placed a weapon on the floorboard of his car and pointed out Kutil. All of this evidence was before the jury. There was conflicting evidence and the choice was for the jury. In reviewing the sufficiency of the evidence this court will not retry a criminal case on the facts of record.[9] The test on review is whether the jury acting reasonably could be so convinced.[10] Only if this court holds as a matter of law that the defendant's acts were so far removed from the injury that they could not be a cause should it hold that the evidence was insufficient to support the conviction.

Asfoor also argues that the evidence was insufficient to support the conviction of the charge of going armed with a weapon. The basis for this argument is that

[9] *State v. Chacon*, 50 Wis.2d 73, 74, 183 N.W.2d 84, 85 (1971).
[10] *Hicks v. State*, 47 Wis.2d 38, 176 N.W.2d 386 (1970); *Lemerond v. State*, 44 Wis.2d 158, 170 N.W.2d 700 (1969).

because Asfoor disarmed Schubert he could not be found guilty of going armed with a concealed weapon. This is one reasonable interpretation of the evidence. Another is that a man who places a .357 Magnum pistol on the floorboard of his car as he is driving is going armed with a concealed weapon, or that even one who disarms another but places the weapon within his reach, underneath a car seat, and remains in the car is going armed with a concealed weapon. This court will not retry the case. The evidence, as to both charges, was sufficient to support the convictions.

■■■ Asfoor contends that if his convictions were sustained, both secs. 939.05 (2) (b), Stats., party to a crime, and 941.23 (1), going armed with a concealed weapon, would be applied in such a manner as to be unconstitutionally vague, indefinite and overbroad. Other than the mere statement of this argument, no supporting analysis is offered. The reason no analysis was offered is there is little to support this claim. The statutes, as applied, are not vague, indefinite or overbroad.

■■■ The defendant argues that the trial judge's failure to recuse himself for bias and excessive interjection of self in behalf of the prosecution denied the defendant a fair trial. When the district attorney moved that two of the charges pending against the defendant be dismissed, the trial court opposed this motion. Although he eventually granted the motion, the judge made a number of remarks concerning his belief that a jury would find the defendant guilty. Asfoor contends that these remarks demonstrated the bias of the judge and that he should have recused himself when the motion for recusal was made. Ordinarily the trial court's remarks would normally be considered inappropriate; however, they were entirely appropriate in the context in which they arose. The judge was expressing his opinion that there was probable cause to believe the defendant committed the crimes charged.

The defendant did not have a statutory right of substitution of judge because this is a pretrial right.[11] However, no person should be tried by a judge who is prejudiced against him.[12] The comments of the trial judge did not demonstrate bias against the defendant. They only demonstrated the court's belief there was probable cause to believe the defendant had committed the crimes charged. The objectivity of the judge is demonstrated by his dismissal of charges he believed could be substantiated.

 Although the judge acted fairly in this case, in some situations he should recuse himself. "The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can reasonably be questioned." ABA Standards, *The Function of the Trial Judge*, sec. 1.7 (1972). The trial judge here had no doubt of his ability to preside impartially in this case. The question then becomes whether there was any appearance of impartiality. *Code of Judicial Ethics*, 36 Wis.2d 252, 256, Standard 3 (1967). The comments complained about were not made in the presence of the jury. The judge granted a change of venue in order that the publicity generated by the dismissal would not prejudice the defendant. Taken out of context, the comments give the appearance of partiality, but when viewed in the context they were made and along with the other actions taken by the court, it is clear that the judge did not appear partial. On two occasions he dismissed serious charges against the defendant and he changed the venue to protect the defendant. He acted to assure Asfoor a fair trial.

[11] Sec. 971.20, Stats.; *State v. Garner*, 54 Wis.2d 100, 103, 194 N.W.2d 649, 650 (1972).

[12] *State ex rel. Mitchell v. Bowman*, 54 Wis.2d 5, 7, 194 N.W.2d 297, 298 (1972).

Sec. 906.14(2), Stats., governs the interrogation of witnesses by a judge. While a judge may question any witness, he must be careful not to function as a partisan or advocate. *State v. Garner,* 54 Wis.2d 100, 104, 194 N.W.2d 649, 651 (1972). "[T]he judge should not take an active role in trying the case for either the state or the defense." *Id.* In this case the judge took a somewhat active role in questioning witnesses. There is a fine line which divides a judge's proper interrogation of witnesses and interrogation which may appear to a jury as partisanship. A trial judge must be sensitive to this fine line. However, the trial judge is more than a mere referee. The judge does have a right to clarify questions and answers and make inquiries where obvious important evidentiary matters are ignored or inadequately covered on behalf of the defendant and the state. A judge does have some obligation to see to it that justice is done but must do so carefully and in an impartial manner. The questions asked here were appropriate and disclose no improper motive nor partiality. From our examination of the entire record we do not believe that the jury was improperly influenced to the detriment of the defendant by any action of the trial court.

The final argument concerning the charge of injury by negligent use of a weapon is that a conviction under sec. 940.24(1), Stats., violates the equal protection clause of the Fourteenth Amendment and the Eighth Amendment in that a conviction of injury by negligent use of a weapon is a felony while conviction of homicide by negligent use of a weapon, sec. 940.08, Stats., is a misdemeanor. Before considering whether there is a deprivation of equal protection it must be determined whether sec. 940.24(1) is a felony and sec. 940.08 a misdemeanor.

A felony is defined in sec. 939.60, Stats.,[13] as a crime punishable by imprisonment in the state prison. Sec. 940.24(1) does not specify where a violator is to be imprisoned; sec. 973.02 applies.[14] This section provides that a sentence of one year, which is the maximum sentence provided under sec. 940.24, may be to either the Wisconsin State prisons or the county jail. Because this crime is punishable by imprisonment in the state prison, it would seem to be a felony, but one cannot come to this conclusion without an examination of *State ex rel. Gaynon v. Krueger,* 31 Wis.2d 609, 143 N.W.2d 437 (1966). In *Gaynon* it was argued that because the statute in question imposed a penalty of imprisonment of not more than a year, it was a felony. The court noted that when the statute in question was created the legislature intended its violation to be a misdemeanor. That was so because at the time the statute was created it was generally recognized that statutes which did not designate a place of imprisonment created misdemeanors. *Id.* at 615–16, 143 N.W.2d at 440. The court held that "[t]o upgrade a misdemeanor to a felony requires a clear expression of intent of the legislature." *Id.* at 620, 143 N.W.2d at 442. The court went on to note that the statute in question was not part of the criminal code and was not under consideration when that code was drafted. Sec. 940.24(1) is part of the criminal code.

[13] "939.60 *Felony and misdemeanor defined.* A crime punishable by imprisonment in the state prison is a felony. Every other crime is a misdemeanor."

[14] "973.02 *Place of imprisonment when none expressed.* When a statute authorizes imprisonment for its violation but does not prescribe the place of imprisonment, 1) a sentence of less than one year shall be to the county jail, 2) a sentence of more than one year shall be to the Wisconsin state prisons and the minimum under the indeterminate sentence law shall be one year, and 3) a sentence of one year may be to either the Wisconsin state prisons or the county jail. But in any proper case sentence and commitment may nevertheless be to the department or any house of correction or other institution as provided by law."

Prior to the criminal code revision in 1955, it was sec. 340.605, Stats., and was originally enacted by ch. 147 of the Laws of 1947. When it was enacted it provided that violators would be imprisoned in the county jail. Ch. 696 of the Laws of 1955 amended and renumbered this section. The amendment omitted the designation of the place of imprisonment. In 1955 the legislature also renumbered sec. 353.27(2) concerning the place of imprisonment when none was specified. That section was essentially the same as the current sec. 973.02 on place of imprisonment when none is expressed. Presumably the legislature was aware that when no place of imprisonment was expressed and the sentence was for a year, a violator could be imprisoned in either the state prison or county jail. Again, presumably, the legislature was aware that a crime which was punishable (not punished) by imprisonment in the state prison was a felony. Thus it would seem that the purpose of omitting the words "the county jail" from the amended statute was to change this violation from a felony to a misdemeanor.

The rationale for *Gaynon* does not apply to this case because the legislature made a deliberate change. A violation of sec. 940.24(1), Stats., is a felony.[15] A violation of sec. 940.08 is a misdemeanor because it is not punishable by imprisonment in the state prison.

Sec. 940.08(1), Stats., provides as follows:

*"Homicide by negligent use of vehicle or weapon.* (1) Whoever causes the death of another human being by a high degree of negligence in the operation or handling of a vehicle, firearm, airgun, knife or bow and arrow may be fined not more than $1,000 or imprisoned not more than one year in county jail or both."

Sec. 940.24(1), Stats., provides as follows:

*"Injury by negligent use of weapon.* (1) Whoever causes bodily harm to another by a high degree of negli-

---

[15] *State v. Postorino,* 53 Wis.2d 412, 418, 193 N.W.2d 1, 4 (1972).

gence in the operation or handling of a firearm, airgun, knife or bow and arrow, may be fined not more than $1,000 or imprisoned not more than one year or both."

The only differences between these two statutes are that sec. 940.08 (1) deals with homicide rather than injury, it includes homicide by operation of a vehicle, and it designates the place of imprisonment. The defendant contends that these statutes violate the equal protection of the laws. One who causes the death of another human being by a high degree of negligence in the operation or handling of a firearm commits a misdemeanor, while someone who causes bodily harm in the same manner commits a felony.

██ ██ "In considering the constitutionality of a statute it is relevant to observe that legislative enactments are presumptively constitutional and that this court will sustain a statute against attack if there is any reasonable basis for the exercise of the legislative power." *Dane County v. McManus*, 55 Wis.2d 413, 423, 198 N.W.2d 667, 672 (1972) ; *State v. Starks*, 51 Wis.2d 256, 259, 186 N.W. 2d 245, 246 (1971). If there is any reasonable basis for penalizing one who causes death by negligent use of a weapon as a misdemeanor while penalizing one who causes injury by negligent use of a weapon as a felony, this court should sustain this classification. But if this classification is irrational or arbitrary, equal protection of the law is denied and this court should strike down the classification.

We are unable to conceive of any reason to support the statutory discrimination of the legislature. It seems probable that the reason that sec. 940.08, Stats., is a misdemeanor is because it contains the crime of death by negligent use of a vehicle and the legislature has made a policy determination that this should be a misdemeanor. But this cannot justify the discrimination produced by these statutes. The same negligent conduct may be a

felony or misdemeanor with the determining factor being whether death or injury resulted. The irrationality of this classification results from the felony being imposed for causing injury and the misdemeanor for causing death. Even though the maximum time of confinement may be the same, a sentence to the state prison is a felony and more serious than a sentence to the county jail.

██ We conclude that the penalty provision of sec. 940.24(1), Stats., when contrasted to the penalty provision of sec. 940.08(1), is unconstitutional in that it denies equal protection of the law as required by the Fourteenth Amendment to the United States Constitution.

We declare that only the penalty provision of sec. 940.24(1), Stats., is unconstitutional because the provision is severable.[16] Its invalidity does not effect the remaining parts of the statute. The defendant Asfoor stands convicted as party to the crime of injury by the negligent use of a weapon.

With the penalty provision stricken, sec. 939.61, Stats., applies. This section provides:

"*Penalty when none expressed.* Common-law penalties are abolished. Whenever a person is convicted of a crime for which no penalty is expressed, he may be fined not more than $250 or imprisoned not more than one year in county jail."

██ This statute as now construed makes sec. 940.24 (1) a misdemeanor, and because Asfoor stands convicted

---

[16] "990.001(11) *Severability.* The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

of injury by negligent use of a weapon he should be sentenced under sec. 939.61.

*By the Court.*—The judgment of conviction under secs. 940.24 (1) and 939.05, Stats., is affirmed; the sentence is vacated and remanded for the imposition of sentence not inconsistent with this opinion; the judgment of conviction and sentence for violation of sec. 941.23 (1) is affirmed.