WANGERIN, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–272–CR. Argued June 2, 1976.—Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 448.)

For the plaintiff in error there was a brief by *William W. Moir III* and *Miller, Hayes & Werner, S. C.,* all of Sheboygan, and oral argument by *Mr. Moir.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. Three issues are presented on this appeal:

1. Was there sufficient evidence to establish that the defendant conducted himself in a manner that was imminently dangerous to another as proscribed by sec. 940.02, Stats.?

2. Was there sufficient evidence to establish that the defendant conducted himself in a manner evincing a depraved mind, regardless of life, as proscribed by sec. 940.02, Stats.?

3. Was it prejudicial error to receive evidence of defendant's flight from the scene of the incident and to receive evidence of his attempts to resist arrest?

*Imminently dangerous conduct.*

The defendant contends that the evidence was insufficient to support the verdict and conviction. Under the circumstances, the test to be applied by this court in determining the sufficiency of the evidence has been set forth in *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725:

"The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. . . . The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted."

No challenge is made to the implicit finding of fact that Wangerin's conduct caused the death of Steven Rittenhouse. Wis J I—Criminal, Part II, sec. 1110, reiterates that:

"The first element of second degree murder requires that the defendant's conduct was imminently dangerous to another, that is, conduct dangerous in and of itself. It must have been conduct inherently and consciously *dangerous to life and not such as might casually produce death by misadventure.*" (Emphasis supplied.)

Wangerin contends that his conduct does not equate with this element.

Defendant relies on the decision in *Seidler v. State* (1973), 64 Wis. 2d 456, 219 N. W. 2d 320, where a twenty-two year-old male babysitter was originally convicted of second-degree murder for causing the death of a two-year-old child. This court reversed the conviction, ordering a new trial on the charge of homicide by reckless conduct, sec. 940.06, Stats. After a review of the evidence, the majority concluded that there was no evidence of a conscious intent on the part of the defendant to have the child strike the metal frame or bedpost when he flung her into the bed. Such a striking was the unfortunate result.

Implicit in the majority holding in *Seidler* is the recognition that the evidence did not show conduct imminently dangerous to life. The opinion dwelt on the language of the early case of *Hogan v. State* (1874), 36 Wis. 226:

"The first condition of the statute is, that the act producing death shall be imminently dangerous to others. It has been said that every act producing death must be thus dangerous. Perhaps this is literally true. But the statute does not go on fortuitous or latent danger, but on essential and apparent danger, of the act producing death. The act must be inherently and consciously dangerous to life, not such as casually produces death by misadventure. It must be dangerous in and of itself, as committed and when committed, whether death follow it or not." Pages 246, 247.

The real distinction between the case at bar and *Seidler* was the total lack of evidence there of acts undertaken

with any intention of harming the deceased. The evidence indicated a purpose of throwing the victim on the bed.

We think the situation is more comparable to that in *Kasieta v. State* (1974), 62 Wis. 2d 564, 215 N. W. 2d 412. In that case, the defendant, who was physically larger than his victim and who knew that his victim suffered from Hodgkin's disease, struck her in the nose and other parts of the face with his fists. The same claim here presented was made to and rejected by this court:

"Defendant claims that his conduct, *i.e.*, striking someone in the nose with his fist, is not imminently dangerous. However, the record establishes that defendant knew of the medical treatments that Jacqueline had been receiving and he knew that she had Hodgkin's disease. Defendant was in his late twenties at the time of the crime. He had played football and baseball in high school, had taken judo lessons and was actively racing stockcars and snowmobiles. Defendant was 5′ 10″ and weighed about 180 pounds. The deceased had multiple bruises on her face, a superficial wound over her left eye, a wound of over one inch long on her scalp, and a fractured nose. From this a jury could reasonably infer that a beating of this nature inflicted by a man of the defendant's characteristics was conduct imminently dangerous to another." Pages 570, 571.

 In the instant case there is ample basis on the record for the jury to determine that the defendant's conduct was imminently dangerous to another. The internal head injuries confirmed the harmful effect of the blows used on the victim. These were blows administered to a prone, nonresisting victim appreciably smaller than the defendant.

*Evincing a depraved mind.*

Another element of the crime of second-degree murder is that the conduct "evince a depraved mind, regardless of life." Wis J I—Criminal, Part II, sec. 1110 states:

"The depravity of mind referred to in second degree murder exists when the conduct causing death demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse."

█ Here the jury could and did find that the defendant's conduct evinced a depraved mind regardless of human life. The record amply supports the conclusion that the defendant utterly disregarded the safety and life of his victim in the pursuit and attack. His testimony could be wholly rejected insofar as it attempted to minimize the force used and the jury could reasonably infer that more extensive violence was used by Wangerin to inflict the degree of injury detailed in the autopsy. After his victim was apparently unconscious, defendant proceeded to beat him about the head while Rittenhouse was making a "gurgling noise" and having great difficulty in breathing. The defendant then got up and in a malicious rage kicked Rittenhouse in the ribs with his heavily Marine-booted foot. This conduct could be viewed by the jury as demonstrating no concern for the life of Rittenhouse.

### Evidence of flight and resistance.

Over defense objection, the trial court admitted evidence showing that the defendant, upon hearing a comment that Rittenhouse was dead, immediately fled from the scene of the crime; that, by use of violence and threats of violence, he armed himself with a butcher knife and a loaded shotgun for the purpose of resisting arrest by shooting any police officers who might attempt to apprehend him; that he did resist and did threaten to shoot the head of a police officer and that, subsequently, he surrendered to the police without any violence. Defendant argues prejudicial error by the admission of such evidence.

It is well established in this state that evidence of flight and resistance to arrest has probative value to guilt. *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101; *United States v. Crisp* (7th Cir. 1970), 435 Fed. 2d 354. This is the general rule followed in the criminal law. 29 Am. Jur. 2d, *Evidence,* secs. 278–280 (1967).

■ The defendant argues an exception to this rule where there is no question concerning the identity of the actor. Examples of this situation could be where death is admitted as caused but self-defense is asserted as a privilege, or where mental disease or defect is pleaded. 29 Am. Jur. 2d, *supra,* sec. 280. However, this case does not involve any issue of justification, self-defense, insanity, intoxication, defense of others or any other defense to liability for an admittedly committed crime. Here the defendant did and does deny guilt of second-degree murder and evidence of his flight from the crime scene and his resistance to arrest was admissible as tending to show consciousness of guilt in a case where the existence of a "depraved mind" is broadly in issue.

Those homicide cases which exclude evidence where identification is not in issue perhaps mistake the credibility questions that are presented when a justification or self-defense rationale is raised, and flight or arrest resistance evidence has a probative effect as it could reflect on the actor's perception of his own conduct at the time, irrespective of his position at trial. The attempts here to minimize the violence and perhaps even explain it involve similar credibility questions. In refusing to instruct the jury on flight and resistance, the trial court properly noted its evidentiary relevance but further properly noted that its effect is not such that instructions according its added weight should be given. We conclude no error occurred on the admission of this evidence.

*By the Court.*—Judgment affirmed.