STATE, Respondent v. MANSON, Appellant.

*No. 75–828–CR.  Argued March 3, 1977.—Decided March 29, 1977.*
(Also reported in 251 N. W. 2d 788.)

For the appellant there was a brief and oral argument by *Dominic H. Frinzi* of Milwaukee.

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J.   The defendant-appellant contends the evidence was not sufficient to establish second-degree murder and that the evidence was not sufficient to establish the defendant was a party to a crime within the meaning of sec. 939.05, Stats.

On May 8, 1975, six to eight customers were in a Milwaukee tavern known as "Pug's 955 Club." One of the customers was the defendant Manson, another was the now deceased Robert Lankford.

Lankford first argued with Manson. Manson moved away from him. He then argued with two black men seated at the bar. Because of the insulting nature of Lankford's remarks, the bartender moved Lankford to the opposite side of the bar. He was then seated near a Mr. Funmaker. Lankford was still belligerent. He broke a beer bottle leaving it with sharp and jagged edges. He threatened Funmaker with the broken bottle. Funmaker backed away and left the tavern through the back door.

Lankford then backed toward the front door. Manson was near the door. Lankford lunged at Manson with the broken bottle. Manson kicked the bottle out of Lankford's hand and Lankford then started to back out of the door. Manson followed him. Lankford either fell or was pushed down a three-step entrance onto the sidewalk. Two unidentified men came out of the tavern. They, together with Manson, started kicking and stomping the prone Lankford. Each of them kicked him at least three or four times and one of the unidentified men jumped in the air and came down on Lankford's head and neck area.

Several persons witnessed the affair and the police were called. Lankford was taken to the hospital; he died of a severe skull fracture to the right side of his head and brain injury. There was also evidence of injury to his forehead, eyes, lips, shin and below the right collarbone.

The two unidentified men left the scene. Manson went back into the tavern and was subsequently arrested.

In *Lock v. State*, 31 Wis.2d 110, 114–15, 142 N.W.2d 183 (1966), this court stated:

"We have said many times that when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. [Cases cited.] . . . Invariably the briefs and arguments on this issue point to what the trier of the facts could have found or what this court should determine. The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

"It is only where the evidence on which the trier of fact has relied can be held incredible as a matter of law that this court will overturn a jury determination." *State v. Zdiarstek*, 53 Wis.2d 776, 784, 193 N.W.2d 833 (1972).

" '. . . In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted.' " *Wangerin v. State*, 73 Wis.2d 427, 433, 243 N.W.2d 448 (1976).

The appellant notes that the victim could have received the blow which resulted in a skull fracture on the right side of the head in three different ways: (1) When a kick was delivered to the right side of his head, (2)

when one of the participants jumped on him with both feet, (3) when his head hit the concrete sidewalk. The appellant dismisses cause one because there was no specific testimony that any witness saw a participant kick Lankford on the right side of his head. Cause two is dismissed because the evidence indicates that Lankford was on his back when the unidentified man jumped on him with both feet, and the appellant concludes that it would have been impossible for this blow to land slightly to the front of the victim's right ear. The appellant argues that it is most probable that the skull fracture occurred when Lankford was pushed or fell to the sidewalk.

He argues that because this act was not imminently dangerous as required for a conviction of second-degree murder[1] he, therefore, could not be found guilty of party to a crime of second-degree murder. While this is a plausible argument, the jury was not bound to accept it. The evidence presented could lead a reasonable jury to the conclusion that death was caused either by kicks delivered to the decedent's head or by jumping on his head. The jury, based upon ample credible evidence, could find Lankford's death was caused by conduct imminently dangerous, evincing a depraved mind, regardless of human life.

The appellant's second argument is that the evidence was insufficient to establish that he was a party to the crime.[2] He contends that because he did not know the

---

[1] "940.02 *Second-degree murder.* Whoever causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, may be imprisoned not less than 5 nor more than 25 years."

[2] "939.05 *Parties to crime.* (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some

other participants in the "scuffle," because he had no conversation with the other participants, because he did nothing to encourage them to enter the "scuffle," and because the events happened with such suddenness, it is impossible to find that even a tacit understanding existed between the other participants and himself.

"The elements of aiding and abetting are that a person: " '(1) [U]ndertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance. [Cases omitted.]' " *State v. Asfoor,* 75 Wis.2d 411, 427, 249 N.W.2d 529 (1977).

The state concedes there is no evidence of an agreement among the men to attack or injure Lankford, but argues that there is no doubt that the appellant's conduct, "as a matter of objective fact," assisted in the commission of the crime. One charged with aiding and abetting must be held responsible for the natural consequences of his act.[3]

Three men, one of whom was the appellant, viciously beat Robert Lankford, literally stomping him to death. In joining the unknown participants in kicking Lankford, the appellant must be held responsible for the natural consequences of the kicking. Such conduct was clearly imminently dangerous and evidenced a depraved

---

other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

" . . ."

[3] *Asfoor* at 429; *State v. Cydzik,* 60 Wis.2d 683, 697, 211 N.W.2d 421 (1973); *State v. Nutley,* 24 Wis.2d 527, 555, 129 N.W.2d 155 (1964), *cert. denied,* 380 U.S. 918.

mind as required by sec. 940.02, Stats.[4] The appellant's overt actions aided those involved in committing this crime and it is clear that it was his intention to do so. The evidence presented, considered rationally by the jury, was sufficient to prove beyond a reasonable doubt that the appellant was guilty of party to the crime of second-degree murder.

*By the Court.*—Judgment and order affirmed.

---

[4] *Wangerin v. State*, 73 Wis.2d 427, 243 N.W.2d 448 (1976).