STATE of Wisconsin EX REL. Donald K. CHOLKA, Petitioner-Respondent,

v.

George JOHNSON, Sheriff of Jackson County, Wisconsin, Respondent-Petitioner.

Supreme Court

*No. 78-133-W. Argued May 5, 1980.—Decided June 3, 1980.*

(Also reported in 292 N.W.2d 835.)

For George Johnson, sheriff of Jackson county, the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the petitioner-respondent there was a brief by *Steven P. Weiss,* assistant state public defender, assisted by *Donald Lang,* law student, with oral argument by *Mr. Lang.*

SHIRLEY S. ABRAHAMSON, J.   This case is before the court on a petition to review a decision of the court of appeals, *State ex rel. Cholka v. Johnson,* 85 Wis.2d 400, 270 N.W.2d 438 (Ct. App. 1978). The court of appeals granted Donald M. Cholka's petition for a writ of habeas corpus and ordered the sheriff of Jackson county to release Cholka from custody, ruling that the county

court of Jackson county, the Honorable Louis I. Dreck-
trah, County Judge, had improperly found that probable
cause existed to bind Cholka over for trial on a charge
of contributing to the delinquency of a minor with death
a consequence, in violation of sec. 947.15(1)(a), Stats.
1975. We reverse the decision of the court of appeals.

Sec. 947.15(1)(a), Stats. 1975, sets forth the elements
of the crime of contributing to the delinquency of a child
with death a consequence. It provides as follows:

"**947.15 Contributing to the delinquency of children;
neglect; neglect contributing to death.** (1) The follow-
ing persons may be fined not more than $500 or impris-
oned not more than one year in county jail or both, and
if death is a consequence may be fined $1,000 or im-
prisoned not more than 5 years:

" (a) Any person 18 or older who intentionally encour-
ages or contributes to the delinquency or neglect of any
child . . . ."[1]

The delinquency of a minor which Cholka is alleged to
have intentionally encouraged or contributed to is the
deceased's procuring, possessing or consuming in public
an intoxicating liquor. We defined delinquency in *State
ex rel. Schulter v. Roraff*, 39 Wis.2d 342, 354, 159 N.W.
2d 25 (1968), for purposes of sec. 947.15, Stats. 1975,

---

[1] Sec. 947.15, Stats., was amended in 1977 to read as follows:

"The following persons are guilty of a Class A misdemeanor,
and if death is a consequence are guilty of a Class D felony:

" (a) Any person 18 or older who intentionally encourages or
contributes to the delinquency of neglect of any child . . . ."

The penalty for a Class A misdemeanor is a fine not to exceed
$10,000 or imprisonment not to exceed 9 months, or both. Sec.
939.51(3)(a), Stats. 1977. The penalty for a Class D felony is
a fine not to exceed $10,000 or imprisonment not to exceed 5 years,
or both. Sec. 939.50(3)(d), Stats. 1977.

Sec. 947.15, Stats. 1977, became effective after the date of the
alleged instant offense.

by looking at sec. 48.12, Stats. 1975,[2] which provides that a minor is delinquent if she violates the criminal law of this state. Sec. 176.31(2), Stats., makes it a crime for a minor (any person under the age of eighteen) to procure, seek to procure, knowingly possess or consume in public any intoxicating liquor.[3]

At the preliminary examination held on July 6, 1978, a detective of the Jackson county sheriff's department testified summarizing the responses Cholka made in a recorded and transcribed interview conducted by the detective with Cholka on April 30, 1978. Cholka's explanation of the events of April 29 and 30, 1978 is as follows: On April 29, 1978, Cholka, eighteen years old, purchased a quart of Southern Comfort, and commencing after approximately 8 p.m., Cholka and his companions drank the entire contents of the bottle in a park. One of the companions was Wilma Wilson, sixteen years old, who drank "at least half if not more of the bottle," "guzzling it

---

[2] Sec. 48.12, Stats. 1975, provided:

"48.12 Jurisdiction over children alleged to be delinquent or in need of supervision. The juvenile court has exclusive jurisdiction, except as provided in ss. 48.17 and 48.18 over any child:

"(1) Who is alleged to be delinquent because he has violated any federal criminal law, criminal law of any state, or any county, town or municipal ordinance that conforms in substance to the criminal law . . . ."

Sec. 48.12, Stats. 1977, which took effect after the date of the alleged offense provides:

"48.12 Jurisdiction over children alleged to be delinquent. The court has exclusive jurisdiction, except as provided in ss. 48.17 and 48.18, over any child 12 years of age or older who is alleged to be delinquent because he or she has violated any federal or state criminal law."

[3] Sec. 176.31(2), Stats., provides:

"Any person under the age of 18 who procures, seeks to procure, knowingly possesses or who consumes in public any intoxicating liquor may be fined not more than $100 or imprisoned not to exceed 10 days or both. The court shall also restrict or suspend the motor vehicle operating privilege as provided in s. 343.30(6)."

down," "chugging" the liquor. Cholka stated that all Wilma Wilson ever drank was Southern Comfort and Black Velvet and that "she really—really drinks a lot for someone her age." The quart of whiskey was consumed and the group left the park and walked to a town tavern. Wilma Wilson was obviously very drunk and fell down several times, and Cholka had to carry her part of the way. Cholka helped put her in a car belonging to a friend of his. The car was parked outside a tavern. Wilma Wilson appeared to be in an unconscious or semiconscious state at this time. After putting her in the car, Cholka went into the tavern and then remembers that he awoke about 5 or 5:30 a.m. the following morning in the friend's car with Wilma Wilson and another girl. Cholka and the girl carried Wilma Wilson out of the car into a house and put her on a bed. Cholka thought she was alive when they carried her into the house; he thought she moved her feet and made some noises. On April 30, 1978, at about 1:30 p.m., Wilma Wilson was found dead on the bed.

The coroner testified at the preliminary examination that he saw the body of Wilma Wilson lying on a bed on April 30, 1978, at about 1:50 p.m.; that he saw one small bruised area on her forehead; that he examined the body under the blouse and found no other evidence of trauma; that he accompanied the body to a hospital; that he observed the autopsy conducted by the pathologist; that he did not feel qualified to comment on any possible pathological disease processes within the body for he thought this topic was in the expertise of a pathologist.

The prosecuting attorney submitted in evidence a state crime laboratory report entitled "Report of Laboratory Findings" which was certified as correct by the administrator and which stated that the blood sample taken from Wilma Wilson contained 4.68 milligrams per milliliter, or 0.468 percent by weight of ethanol (ethyl alco-

hol) ; that the urine sample contained 5.80 milligrams per milliliter ethanol; and that the blood, urine, stomach contents and liver tissue were screened for drugs and "no drugs were detected in the specimens." The defense agreed that pursuant to sec. 165.79(3), Stats., the findings described above were admissible into evidence at the preliminary examination without requiring the expert who made the findings to testify.

The defense objected, however, to admitting into evidence the last sentence of the Laboratory Report which stated: "Blood alcohol levels in excess of 3.5 milligrams per milliliter are considered lethal." The defense argued that this sentence was a conclusionary statement and not within the purview of sec. 165.79(3), Stats.

Sec. 165.79(3), Stats., provides:

"(3) At any preliminary examination a report of the laboratory's findings with reference to all or any part of the evidence submitted, certified as correct by the administrator or a person designated by the administrator, shall, when offered by the state or the accused, be received as evidence of the facts and findings stated, if relevant and otherwise admissible in evidence. The expert who made the findings need not be called as a witness unless the expert's appearance is demanded by the opposing party, in which case the judge shall so order and adjourn the hearing to a time when the expert is available to testify."

The county court agreed to exclude from consideration this last sentence of the Laboratory Report relating to lethal blood alcohol levels. The prosecuting attorney argued that the sentence was necessary in order to show that "death was due to an overdose of alcohol." The county court did not accept the prosecutor's position and noted that the record already showed that Wilma Wilson drank half a bottle of Southern Comfort and that "[t]he Court will take his common sense into consideration."

The defense also argued that the state had not shown that alcohol had caused Wilma Wilson's death and that therefore the state had not shown probable cause to believe a felony had been committed by the defendant.

The county court found that Cholka had purchased the liquor, that Southern Comfort is a strong liquor and can be fatal, that half a quart "is an immense amount, in a relatively short period of time for a young lady here only 16," and that it would "not have any difficulty applying [its] own common sense that it would result in her death." The court therefore found probable cause that a felony had been committed by the defendant and bound the defendant over to circuit court for further proceedings.

The prosecuting attorney again urged the county court to admit into evidence the last sentence of the Laboratory Report, arguing that it was properly admissible as a laboratory "finding" or "fact" and that it was needed to show that Wilma Wilson's blood alcohol levels were in excess of the lethal amount. After argument by both counsel, the county court decided to admit into evidence the last sentence of the Laboratory Report.

On July 17, 1978, an information was issued charging Cholka with violation of sec. 947.15(1)(a), Stats. 1975. Cholka filed a petition for a writ of habeas corpus with the court of appeals on August 10, 1978, arguing that "no competent evidence was presented [at the preliminary examination] to support the allegation that any death was the consequence of defendant's alleged actions [in purchasing the liquor and giving it to Wilma Wilson]." Cholka argued that the last sentence of the Laboratory Report, concerning the blood alcohol levels which are considered lethal, should not have been admitted into evidence and that the state should have called a medical expert to testify on this point. Cholka also argued that possible causes of death existed other than alcohol intake.

The court of appeals held that there was no competent evidence to support the county court's finding of probable cause and the bindover to circuit court on a charge of violating sec. 947.15(1)(a), Stats. 1975. The county court's "practical and common sense conclusion" that the evidence showed a causal relationship between the minor's consumption of liquor and her subsequent death was construed by the court of appeals as an improper use of judicial notice. *State ex rel. Cholka v. Johnson,* 85 Wis.2d at 402, 403. The court of appeals also ruled that the last sentence of the State Crime Laboratory Report (namely, that "[b]lood alcohol levels in excess of 3.5 milligrams per milliliter are considered lethal") was an opinion and not a finding that was admissible under sec. 165.79(3), Stats. The court of appeals concluded that "absent evidence of what amount of blood alcohol is considered lethal, the percent of alcohol in Wilma Wilson's blood is not significant." *State ex rel. Cholka v. Johnson,* 85 Wis.2d at 405.

The purpose of a preliminary examination is to determine if there is probable cause, a reasonable probability, to believe a felony has been committed by the defendant. *State v. Olson,* 75 Wis.2d 575, 584–585, 250 N.W.2d 12 (1976). The court at a preliminary examination determines whether further criminal proceedings are justified.

Sec. 970.03, Stats., governing preliminary examinations, provides in part:

"970.03 **Preliminary examination.** (1) A preliminary examination is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the defendant.

". . .

"(5) All witnesses shall be sworn and their testimony reported by a phonographic reporter. The defendant may cross-examine witnesses against him, and may call wit-

nesses on his own behalf who then are subject to cross-examination.

" . . .

" (7) If the court finds probable cause to believe that a felony has been committed by the defendant, it shall bind the defendant over for trial.

" . . .

" (9) If the court does not find probable cause to believe that a crime has been committed by the defendant, it shall order the defendant discharged forthwith."

The issue in the instant case is whether the evidence presented at the preliminary examination was sufficient to show there is probable cause to believe that the liquor provided by Cholka and consumed by Wilma Wilson was causally linked to her death.

The scope of appellate review of the sufficiency of the evidence adduced at the preliminary examination is set forth in *State ex rel. Hussong v. Froelich,* 62 Wis.2d 577, 583, 215 N.W.2d 390 (1974) as follows:

"It is well established in this state that the evidence at a preliminary hearing need not be sufficient to prove the charge against the defendant beyond a reasonable doubt. The reviewing court can examine the evidence only sufficiently to discover whether there was any substantial ground for the exercise of judgment by the committing magistrate. When the reviewing court has discovered that there is competent evidence for the judicial mind of the examining magistrate to act on in determining the existence of the essential facts, it has reached the limit of its jurisdiction and cannot go beyond that and weigh the evidence."

See also *State v. Berby,* 81 Wis.2d 677, 684, 260 N.W.2d 798 (1978).

For purposes of testing the sufficiency of the evidence, we shall initially exclude from consideration the challenged last sentence of the Laboratory Report.

Evidence adduced at the preliminary examination upon which the court made the probable cause determination showed that Cholka furnished liquor to the deceased who was aged sixteen; the deceased consumed at least one-half of a quart of Southern Comfort within a short period of time; she became extremely intoxicated and slipped into a semi-conscious or unconscious state on the evening of April 29, 1978; she was put in an automobile during the night and was removed from the automobile the following morning, April 30, 1978; she was found dead at approximately 1:30 p.m. on April 30, 1978, with no observable signs of trauma; and the body specimens showed no signs of drugs other than alcohol. The issue which the court of appeals should have considered, but did not, was whether these facts presented a basis from which the county court could conclude, *i.e.* a basis from which the county court could draw the inference, that there was a causal connection between the deceased's consumption of liquor which had been furnished by Cholka and her subsequent death. Causation is a fact which may be inferred from other facts.

A court may take judicial notice of facts "(a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Sec. 902.01(2), Stats. *See* McCormick, *Evidence* 761 (2d ed. 1972). That Southern Comfort is an intoxicating liquor and that excessive consumption of an intoxicating liquor can cause death are facts that are generally known, and thus the court in the instant case properly took judicial notice of these facts.

In addition a court may, as may a jury, apply common knowledge and individual observations and experience to the evidence presented for the purpose of drawing factual inferences therefrom. *De Keuster v. Green Bay & W. R.*

*Co.,* 264 Wis. 476, 479, 59 N.W.2d 452 (1953) ; *McCarty v. Weber,* 265 Wis. 70, 72, 60 N.W.2d 716 (1953) ; *Coenen v. Van Handel,* 269 Wis. 6, 10, 68 N.W.2d 435 (1955) ; Wis. J. Inst.—Criminal No. 195. The county court in the instant case could take into consideration the "practical and nontechnical probabilities of everyday life"[4] in determining that the evidence supported the factual inference that Wilma Wilson's death was a consequence of drinking the Southern Comfort liquor.

Where excessive drinking by a minor is followed by a state of semi-consciousness or unconsciousness and then by death within a relatively short period of time, the court using ordinary reasoning may reasonably infer that there is a causal relation between the consumption of alcohol and the death. The court properly relied on a rational inference in the instant case. McCormick, *Evidence* 803 (2d ed. 1972).

Although the state was required to introduce sufficient evidence to afford a reasonable basis for the court to conclude that there was a causal link between the conduct of Cholka and the death of the minor, the state was not required to produce in the instant case expert medical testimony at the preliminary examination in order to provide a sufficient basis for the court's conclusion as to causation. In this case we have a medical matter which a layman is competent to judge; no expert testimony was needed to permit a conclusion as to causation in the instant case.

Without considering the challenged sentence of the Laboratory Report, we have determined that the evidence

---

[4] We have said that a preliminary examination is "concerned with the practical and nontechnical probabilities of everyday life in determining the existence of probable cause." *Taylor v. State,* 55 Wis.2d 168, 173, 197 N.W.2d 805 (1972). *See also State ex rel. Huser v. Rasmussen,* 84 Wis.2d 600, 605–606, 267 N.W.2d 285 (1978).

produced at the preliminary examination supports the determination that there was probable cause to believe a felony had been committed by Cholka. Accordingly, we need not decide whether the challenged sentence of the Laboratory Report was admissible under sec. 165.79(3), Stats.

For the reasons set forth above, we reverse the decision of the court of appeals.

*By the Court.*—Decision of the court of appeals reversed, and cause remanded to the circuit court for further proceedings not inconsistent with this opinion.