KRUEGER, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–119–CR.*

*Decided June 30, 1978.*
(Also reported in 267 N.W.2d 602.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Mark Lukoff,* assistant state public defender.

For the defendant in error there were briefs by *Bronson C. La Follette,* attorney general, and *David J. Becker,* assistant attorney general.

HANLEY, J.   On appeal, the defendant raises two questions: (1) Did the trial court err in holding that the defendant's right to a jury trial was waived when, in the defendant's presence, the defense counsel entered an oral waiver without objection from the defendant, and (2) Is the evidence sufficient to sustain the defendant's conviction?

*Jury Trial Waiver*

Defendant contends that he did not waive, under the circumstances of this case, his right to a trial by jury. The facts and circumstances surrounding this issue, as reflected by the initial record on appeal, was limited to the following colloquy which occurred in the defendant's presence:

"The Court: Is there a waiver or request for jury trial?

"Mr. McMahon [defense counsel]: Judge, there is a waiver of the jury trial.

"The Court: All right, we'll schedule this matter for trial on February 27, 1976, at 9:00 a.m."

This record showed that during this exchange the defendant remained mute and that the trial court did not

question the defendant about his education, knowledge of the function of a jury, or what a waiver of this right entailed.

On March 7, 1978, this court entered a *Per Curiam* decision which addressed only the jury trial waiver issue. *Krueger v. State*, 82 Wis.2d 810, 263 N.W.2d 225 (1978). After briefly setting forth the facts surrounding the waiver, this court stated:

"The trial court had the right to presume that defense counsel had fulfilled his duty of proper representation by fully explaining to the accused the function of a jury and what a waiver of this right entailed.

"However, we think justice will be better served by retaining jurisdiction in this court, and remanding the case to the trial court to ascertain whether the jury waiver was entered or ratified by the defendant or by counsel authorized to so act in his behalf."

The trial court was instructed to conduct an evidentiary hearing in the manner described in *State ex rel. Goodchild v. Burke*, 27 Wis.2d 244, 264–65, 133 N.W.2d 753 (1965) so as to elicit testimony relative to the question of whether defense counsel waived the jury trial without the knowledge or consent of the accused. This opinion did not, of course, address the sufficiency of evidence rule.

On March 30, 1978, a hearing was held in the county court for Columbia County, the Hon. Lewis W. Charles presiding. At the outset, the trial court concluded that because this court retained jurisdiction, the trial court would not make a determination as to whether there was a valid jury waiver but would only preside at the taking of testimony.

The transcript of this hearing is brief and can be divided into three parts. In the first part, the defendant testified only so far as to waive the attorney-client privilege concerning his discussions with his trial counsel. In

the third part, the defendant was examined only with relation to the defendant's decision not to testify at the hearing. The remainder of the transcript is devoted to the testimony given by Earl McMahon, the defendant's counsel at the time of the alleged jury trial waiver.

Mr. McMahon testified on direct examination that he had been in the practice of law for over 30 years and that he was privately retained by the defendant in July, 1975 to defend him on the burglary charges involved in this case.

Mr. McMahon stated that he conferred with the defendant respecting the burglary charges and several unrelated traffic charges on December 22, 1975, January 8, January 9 and January 23, 1976. On January 9, Mr. McMahon represented the defendant in a trial to the court on the traffic charges. During this trial and these conferences, Mr. McMahon stated that he noticed that the defendant had a very serious speech defect which was aggravated when he was under pressure. Mr. McMahon stated:

"[T]his was brought to my attention very pointedly on the 9th day of January, 1976, when he testified in his own behalf at a traffic trial, and I felt that he did have a serious problem with a speech defect; serious stammer which prevented him from communicating clearly when he was under pressure.
". . .
"If enough time elapsed, he could get his conversations to me, but he was a very angry young man at that time, and he had difficulty settling down so that he could talk, not necessarily intelligently, but commonly enough so that it was easy to understand him; but I'm sure that on all occasions, I got the message that he was giving me."

Because of this speech defect, Mr. McMahon stated that he decided to advise the defendant to waive a jury trial on the burglary charges as a matter of "trial tactics." "I suggested that he waive the jury trial, because I felt

that he would be under pressure and would be able to better communicate his ideas to the court."

Mr. McMahon so advised the defendant on January 23. During a conference with the defendant before arraignment on the burglary charges, Mr. McMahon testified he discussed the right to a jury trial, and the nature and function of the jury, with the defendant.

"Q. Now, based upon your recollections of these discussions, and the refreshing of your recollections after having referred to your file, were there specific discussions in regard to a jury trial?

"A. Yes.

"Q. Now, in these discussions, state whether or not you advised the defendant, Mr. Krueger, of the nature and function of a jury trial?

"A. I did.

"Q. To the best of your recollection, please tell the Court what you said to him concerning the nature and function of a jury trial?

"A. To the best of my knowledge, I told him the same thing that I've told other defendants; namely, that he did have a right to a jury trial in Columbia County by 12 persons from Columbia County; that the jury, before they could find him guilty, would have to vote unanimously that he was guilty, and that the failure of any one of the jurors to so vote would have prevented them from finding him guilty of the charges.

"Q. All right. So, it's your testimony therefore, Mr. McMahon, that you not only advised Mr. Krueger of the nature and function of a jury trial, but you also advised him that he had a right to a jury trial, is that correct?

"A. That is correct.

"Q. Now, state whether or not he appeared to understand the nature and function of a jury trial?

"A. It appeared to me that he understood; yes.

"Q. Now, state whether or not you told the defendant that he alone had to make the final decision as to whether or not he should waive a jury trial?

"A. The only thing that I can answer to that question is that through my practice that has been part of my statement to defendants, and I can only say that I gave

him that advice, although I can't remember the specific words at the time that I talked to Mr. Krueger. But, I have done this over the years, and that would be my advice to him.

"Q. Could you paraphrase for the Court today what words you used as a matter of standard practice in advising your clients to waive a—that they have the final decision as to the waiver of a jury trial?

"A. Well, I guess the answer I say is that—or the statement that I make is that the decision as to whether or not they have a trial, or the entry of a plea, or whatever they're going to do is strictly up to them. I can advise them, but I certainly cannot make up their minds for them. That has to be their decision.

"Q. All right. Now, it's your testimony that you did advise Mr. Krueger that he alone had the decision to make?

"A. Well, I'm not sure that I used those words. I think I probably told him that the decision had to be his.

"Q. *Now, did he make a decision on whether or not to waive a jury trial?*

"A. *My answer to that—of course, this is the crux of this whole problem—is yes, he did make such a decision, and he elected to waive a jury trial.*

"Q. *Now, how did he affirmatively indicate to you that he wished to waive a jury trial, if you can recall?*

"A. *I cannot recall. The only thing that I can state for the Court is that he obviously gave me an affirmative answer to my question to him whether or not he wanted to waive a jury trial, or I would not have been in this Court within the next 10 minutes or half hour waiving a jury trial, with him along side of me not saying anything. I guess I can't remember any specific response on his part, although he does have trouble with his speech. He gave me an affirmative response of some sort, or I wouldn't have been in here waiving the jury trial.*" (Emphasis supplied.)

On cross-examination by the public defender, Mr. Mc-Mahon stated that the defendant did not expressly say that he wanted to waive the jury trial, or that he did not want to waive the jury trial. Although he believed that the defendant gave some affirmative indication

that he wanted to waive the jury, Mr. McMahon could not recall "what affirmative action he used to tell me [McMahon] that he was waiving the jury." Mr. McMahon was not sure whether the defendant indicated his desire to waive the jury by words or by physical expression:

"Q. Did you specifically wait for a verbal answer from Mr. Krueber as to whether or not he verbally wished to waive a jury?

"A. I'm sure I did, but I can't tell you that he said any specific words at the end of my waiting."

Mr. McMahon's testimony indicates that he fully and faithfully advised the defendant of his right to a trial by jury and of the jury's function in criminal proceedings, and that the defendant understood what he was being told. The testimony also demonstrates that the defendant indicated that he wished to waive the jury trial. On the basis of the supplemental record, we are satisfied that there was a voluntary and intelligent waiver of jury trial.

The defendant in the instant case has served his sentence. Apparently the purpose of this appeal is to test the current validity of this court's decision in *State ex rel. Derber v. Skaff,* 22 Wis.2d 269, 125 N.W.2d 561 (1964) (*Per Curiam*). In *Skaff,* under circumstances identical to those of the instant case, this court held that an accused would be deemed to have waived the right to a jury trial on the theory that "the presence and silent acquiescence of the defendant . . . sufficiently demonstrates the authority of the attorney to speak for the defendant, and makes the attorney's statement his own." *State ex rel. Derber v. Skaff, supra* at 274. This rule was again applied in *Dascenzo v. State,* 26 Wis.2d 225, 229–30, 132 N.W.2d 231 (1965).

The defendant claims that subsequent federal decisions compel the conclusion that no constitutionally valid waiv-

er was accomplished here. In *Skaff,* this court relied on the current status of the law which permitted states to establish their own procedures for waiving a jury trial in criminal proceedings because the Fourteenth Amendment was not then viewed as requiring states to afford jury trials. *State ex rel. Derber v. Skaff, supra* at 271–72. However, in *Duncan v. Louisiana,* 391 U.S. 145, 149 (1968), the Supreme Court held that jury trials were, in most instances, mandated by the Constitution: "Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantees." It has long been the rule, however, that a defendant in a federal criminal proceeding could waive the right to a jury trial when the defendant expressly and intelligently waived the right, and when both the court and the prosecution consented thereto. *Patton v. United States,* 281 U.S. 276 (1930).

More recently, the Supreme Court in *Boykin v. Alabama,* 395 U.S. 238 (1969) held that a voluntary guilty plea would not be presumed from a silent record because such a plea entailed the waiver of various fundamental rights. Consequently, in *Ernst v. State,* 43 Wis.2d 661, 170 N.W.2d 713 (1969), this court discarded the rule which had heretofore permitted trial courts to assume that a guilty plea entered by a defendant was knowingly and willingly made. *See, State v. Strickland,* 27 Wis.2d 623, 631, 135 N.W.2d 295 (1965). In its place, the court made mandatory a procedure by which the trial court, before accepting a guilty plea, must determine the defendant's education and general comprehension, his understanding of the nature of the crimes with which he is charged, his voluntariness in so pleading, and his understanding of his right to court appointed counsel and

of the possibility that counsel may discover defenses or mitigating circumstances. *Ernst v. State, supra* at 674.

Although a formal procedure has thus been established for trial courts to follow in accepting guilty pleas, it does not appear that a similar court initiated inquiry has been held to be mandatory in accepting jury trial waivers. The presumption that the defendant's attorney speaks for his client and that by silence the defendant adopts the attorney's statement waiving the right to jury trial has been, and continues to be followed in Illinois. *See, People v. Grimmler,* 46 Ill. App.3d 440, 361 N.E.2d 44 (1977) ; *People v. Thompson,* 38 Ill. App.3d 101, 347 N.E.2d 481 (1976) ; *People v. Tidwell,* 33 Ill. App.3d 232, 338 N.E.2d 113 (1975) ; *People v. Murrell,* 60 Ill.2d 287, 326 N.E.2d 762 (1975) ; *People v. Sailor,* 43 Ill.2d 256, 253 N.E.2d 397 (1969). Moreover, the Seventh Circuit Court of Appeals has taken the position that neither the Federal Rules of Criminal Procedure nor the Sixth Amendment requires federal trial courts to personally interrogate the defendant as to his knowledge and intent before accepting a waiver of the jury trial. *United States v. Kidding,* 560 F.2d 1303 (7th Cir. 1977), *cert. den.,* 434 U.S. 872, 98 S. Ct. 217, 54 L. Ed.2d 151; *Estrada v. United States,* 457 F.2d 255 (7th Cir. 1972), *cert. den.,* 409 U.S. 858.

Nevertheless, we now overrule *State ex rel. Derber v. Skaff, supra,* and *Dascenzo v. State, supra,* insofar as they permit a trial court, in situations similar to that presented by this case, to presume from a defendant's silence that a waiver of the jury trial made by counsel is an expression of the defendant's knowing and voluntary intent. Even if it is reasonable to assume that most defense attorneys will inform a client of the right and its meaning to the defendant, it seems wholly unreasonable to expect a defendant who does not understand these matters to contradict a waiver made by his attorney. We

hold that the record must support, without the aid of these presumptions, the conclusion that the defendant in fact made a knowledgeable and voluntary choice.

This case was remanded to the trial court to ascertain whether the jury waiver was entered or ratified by the defendant or by counsel authorized to act in his behalf. On the basis of the record as supplemented, we hold that the defendant's jury trial waiver was valid.

But the procedure we have taken in this case is not desirable. Therefore, we further hold that henceforth a record demonstrating the defendant's willingness and intent to give up the right to be tried by a jury must be established before the waiver is accepted. We do not at this time adopt a formal procedure to be followed in making such a record, but cite with approval the procedure followed in *White v. State*, 45 Wis.2d 672, 682–83, 173 N.W.2d 649 (1970), where the record was developed by the district attorney, and the procedure suggested in *ABA Standards Relating to Trial by Jury*, sec. 1.2 (b) (1968), which places the responsibility of developing the record on the trial court itself.

*Sufficiency of the Evidence*

The defendant also contends that the evidence adduced at trial was insufficient to support his conviction. We have frequently said:

". . . when the question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt. . . . This ultimate test is the same whether the trier of the facts is a court or a jury. . . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this

court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.

". . . Stating the rule conversely for the sake of clarity, the evidence when considered most favorably to the state and the conviction must be so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt.' " *White v. State, supra* at 677–78, quoting *Lock v. State,* 31 Wis.2d 110, 114–15, 142 N.W.2d 183 (1966).

The test is the same whether the proof is by testimonial or circumstantial evidence. *Whitemore v. State,* 56 Wis. 2d 706, 713, 203 N.W.2d 56 (1973).

The two burglaries for which the defendant was convicted occurred, along with several other burglaries in the area, within a period of a few weeks in June, 1975. At the trial, two of the witnesses who testified, LeRoy Fischer and Ralph Katze, admitted that they had participated in the two burglaries for which the defendant was tried: the burglary of the Maginnis Service Garage and the burglary of the Alvin Fischer residence. The defendant testified that he knew and was friends with Fischer and Katze.

With respect to the burglary of the Maginnis Garage, which occurred between 11:30 p.m. and 6:30 a.m. on the night of June 19–20, 1975, Fischer testified that Katze and the defendant were with him at the time he entered the garage. Katze also testified that the defendant was with them when he entered the garage. Although Katze stated that he was not sure that the defendant entered the garage, he did testify that "when we went to get out, Greg [the defendant] was on the outside of the window."

With respect to the burglary of the Alvin Fischer residence, which took place a few days later, LeRoy Fischer testified that he and Katze picked up the defendant soon

after lunch and drove out to the Alvin Fischer residence. At that time, the defendant was living on his father's farm which was located about six miles from the Fischer residence.

Both LeRoy Fischer and Katze admitted entering the Fischer residence. LeRoy distinctly remembered that the defendant was present during the burglary, but could not recall whether he entered the farmhouse. Katze testified that the defendant did not enter the house, but rather spent his time "[r]unning around, looking at all the stuff . . . [and] looking over the farm." Katze further testified that he and LeRoy Fischer took guns from the house.

Alvin Fischer, on the day his house was burglarized, left home with his family to attend a community picnic. On his way, he passed an automobile in which three persons were sitting, two of whom he recognized as Katze and the defendant. When he returned home later in the day, Mr. Fischer found that several firearms had been taken from the house, and that several small tools and a chain saw had been taken from machine sheds on the farm. Later, Columbia County Sheriff Department officials found several of these guns on the farm owned by the defendant's father.

The defendant claimed that he was not with Katze and Fischer on either occasion. The defendant testified that on the night Katze and Fischer burglarized the Maginnis Garage, he was not with them but at an outdoor theater. He also testified that on the afternoon Katze and Fischer burglarized the Alvin Fischer residence, he was baling hay on his father's farm.

The defendant called two witnesses to substantiate his alibi. The first witness testified that he saw the defendant baling hay on his father's farm between 11:00 and 11:30 a.m. on the day the Alvin Fischer resident was burglarized. The second witness, the defendant's mother,

testified that on this same day Katze and LeRoy Fischer came to their farm, spoke briefly with the defendant, and then left without him. She also testified that because hay had been baled that day, she assumed the defendant did not leave the farm. However, she further testified that other family members were also engaged in baling the hay, including the defendant's father.

The trial court found the defendant guilty of the crimes charged under the conspiracy theory of sec. 939.-05(2)(c). Subsequently, in its decision on the post-conviction motions, the trial court found that the evidence sufficiently showed "that the defendant was ready and willing to render aid and was not merely a bystander or spectator, innocent of any unlawful intent." Therefore, the respondent argues that the court concluded that the defendant was also guilty of the burglaries under the aider and abettor statute, sec. 939.05(2)(b), Stats. We agree, and conclude that the evidence is sufficient to support the defendant's conviction on this theory.

The elements of aiding and abetting are that a person:

"(1) undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further (2) he consciously desires or intends that his conduct will yield such assistance." *State v. Manson,* 76 Wis.2d 482, 486, 251 N.W.2d 788 (1977), quoting *State v. Asfoor,* 75 Wis. 2d 411, 427, 249 N.W.2d 529 (1977).

The evidence adduced at this trial sufficiently demonstrates the existence of these elements with respect to the defendant's participation in both burglaries. There is sufficient evidence that on both occasions the defendant accompanied Katze and Fischer to the scenes of the crimes, remained with his friends while the burglaries took place, and left with them and the stolen goods. There is also evidence demonstrating that on both occa-

sions, the defendant undertook conduct which as a matter of objective fact aided the others in the execution of the burglaries. In the Maginnis Garage incident, the defendant's conduct could reasonably be viewed as that of a lookout. Moreover, the evidence is sufficient to permit the trial court, as fact finder, to reasonably infer that the defendant consciously desired to yield such assistance to the others. *See, Bethands v. State,* 45 Wis. 2d 606,, 613–15, 173 N.W.2d 634 (1970). In the Fischer residence incidence, the evidence indicating that the defendant prowled about areas of the farm from which other items were taken, and that some of the goods taken from the Fischer residence were later found on the farm where he was then living is sufficient to afford the fact finder a reasonable basis on which to conclude that the defendant again aided the others. The actions of an aider and abettor need not constitute an essential element of the crime executed by the principals. *Taylor v. State,* 55 Wis.2d 168, 178, 197 N.W.2d 805 (1972). It is sufficient if the evidence demonstrates that the aider and abettor stood ready and willing to render aid if needed. *State v. Cydzik,* 60 Wis.2d 683, 698, 211 N.W.2d 421 (1973).

The defendant argues that he cannot be convicted either as a conspirator or aider and abettor because the state did not show that he had a "stake in the ventures." This language is taken from the elements of aiding and abetting as enumerated in *State v. Nutley,* 24 Wis.2d 527, 554–56, 129 N.W.2d 155 (1964). However, having a "stake in the venture" is not an additional element to the statutorily defined liability theory of aiding and abetting and is not necessary to sustain a conviction thereon. *See, State v. Manson, supra* at 486; *State v. Asfoor, supra* at 427; *State v. Cydzik, supra* at 698.

We conclude that the evidence was sufficient to support the trial court's finding that the defendant was guilty of both counts of burglary.

*By the Court.*—Judgment and order affirmed.