STATE of Wisconsin, Plaintiff-Respondent,

v.

Lenzy WILSON, Defendant-Appellant.†

Court of Appeals

No. 92–2212–CR. *Submitted on briefs June 2, 1993.—Decided October 26, 1993.*

(Also reported in 508 N.W.2d 44.)

†Petition to review denied.

662

665

For the defendant-appellant the cause was submitted on the briefs of *Elizabeth E. Stephens*, assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, by *James M. Freimuth*, assistant attorney general, of Madison.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J.   Lenzy Wilson appeals from a judgment of conviction finding him guilty of armed robbery, party to a crime, as a habitual offender, contrary to secs. 943.32(1)(b) and (2), 939.05 and 939.62, Stats. Wilson also appeals from an order denying his request for postconviction relief. Wilson presents the

following issues for our review: (1) Was Wilson denied his right to testify?; (2) Was Wilson denied his right to due process and to present a defense when the trial court excluded expert testimony on eyewitness identification?; (3) Was trial counsel ineffective for failing to adequately advise Wilson that he had the right to testify over counsel's advice and for failing to make an adequate offer of proof about the proposed expert testimony?; and (4) Should the lineup and subsequent in-court identification have been suppressed? We consider each issue *seriatim* and, for the reasons set forth below, we affirm.

## I. BACKGROUND

This case has its genesis from the knife-point robbery of Myra Grabowski. On October 26, 1988, at approximately 5 p.m., Grabowski returned home from work and saw a "suspicious" vehicle parked in the middle of the alley where her garage was located. Grabowski took note of the license plate number as she drove around the vehicle to enter her garage. As Grabowski was exiting the garage, an assailant accosted her, grabbed her left arm and placed a knife to her throat. The assailant then stated: "Give me your purse or I will slash your throat." Grabowski surrendered her purse.

The assailant walked down the alley and entered the vehicle that Grabowski had observed earlier. Grabowski wrote down the license plate number and called the police. Grabowski gave a description of the vehicle, its driver and the clothes that the driver wore. Later that evening the police brought the vehicle and the driver to her residence where she identified them as being in the alley earlier that evening. The driver was Robert Green. Green implicated Lenzy Wilson as the

perpetrator of the robbery on Grabowski. Green, however, was discredited before trial and did not testify during the proceedings.

Two days after the crime, Grabowski was called into the police station to view a police lineup. She identified Wilson as her assailant. Wilson was then arrested.

The lineup identification was the subject of a suppression motion. Wilson moved for suppression based on illegal arrest, and also challenged the identification procedures and any in-court identification which might follow. Also prior to trial, the State brought a motion *in limine* to exclude expert testimony on eyewitness identification. The trial court ruled against Wilson on both motions and the case proceeded to trial. Wilson was convicted as charged and sentenced to thirty years in prison.

Wilson brought a postconviction motion for a new trial alleging, *inter alia*, that trial counsel was ineffective under the state and federal constitutions and that the defense was prejudiced. A hearing was held on August 6, 1992. The motion was denied. Wilson now appeals. Further facts necessary to a resolution of the case are set forth below.

## II. WAIVER OF RIGHT TO TESTIFY

Wilson's first claim of error is that he was denied his right to testify at trial. Wilson asserts that the right to testify is a fundamental and personal right of the accused which may be waived only by the defendant, personally and directly to the court, together with the court's finding that the waiver is knowing and voluntary. Because, he says, the record does not reflect a knowing and voluntary waiver of his right to testify, Wilson reasons that the trial court erred. To address

his argument, we look to the law concerning a defendant's right to testify.

In 1980, the Wisconsin Supreme Court decided *State v. Albright*, 96 Wis. 2d 122, 291 N.W.2d 487 (1980). In *Albright*, the court concluded that a criminal defendant has a constitutional due process right to testify on his or her behalf. *Id.* at 129, 291 N.W.2d at 490. However, the court concluded that the right was not a "fundamental" or personal right that "can only be waived in open court on the record by the defendant." *Id.* at 130, 291 N.W.2d at 490-91. The court stated: "To be sure, the right to testify is an important constitutional right. However, we believe that the right to testify, as distinguished from those rights considered to be so fundamental as to be personal to the defendant, does not go to the very heart of the adjudicatory process." *Id.* at 130, 291 N.W.2d at 491. The court went on to conclude that although the decision to testify should be made by the defendant after consulting with counsel, nonetheless, "counsel, in the absence of the express disapproval of the defendant on the record during the pretrial or trial proceedings, may waive the defendant's right to testify." *Id.* at 133, 291 N.W.2d at 492.

In 1987, the United States Supreme Court decided *Rock v. Arkansas*, 483 U.S. 44 (1987). *Rock* considered the issue of "whether Arkansas' evidentiary rule prohibiting the admission of hypnotically refreshed testimony violated petitioner's constitutional right to testify on her own behalf as a defendant in a criminal case." *Id.* at 45. Vickie Rock was charged with manslaughter in connection with the shooting death of her husband. *Id.* at 45. Because she was unable to remember the precise nature of the events surrounding the

669

shooting, her attorney recommended that she undergo hypnosis. *Id.* at 46. After learning of the hypnosis, the prosecutor filed a motion to exclude Rock's testimony. *Id.* at 47. The trial court subsequently issued an order limiting Rock's testimony to " 'matters remembered and stated to the examiner prior to being placed under hypnosis.' " *Id.* Rock challenged the ruling, arguing that her constitutional right to testify in her own defense was abridged. *Id.* at 49.

The Supreme Court first acknowledged, as discussed in *Albright*, that under common law, a party to the litigation was "disqualified from testifying because of their interest in the outcome of the trial." *Id.* The Court noted, however, that under our present adversarial system, it cannot be doubted that a criminal defendant has the right to take the stand and testify on his or her behalf. *Id.* The Court found the source of the right to testify in one's defense in several provisions of the Constitution: the Due Process Clause of the Fourteenth Amendment; the Compulsory Process Clause of the Sixth Amendment; and, as a corollary to the Fifth Amendment's guarantee against compelled testimony. *Id.* at 51-53. The Court also noted: "On numerous occasions the Court has proceeded on the premise that the right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right." *Id.* at 53 n.10. Thus, in direct contrast with *Albright*, the United States Supreme Court has clearly indicated that the constitutional right to testify should be treated as fundamental in nature.

■

Our inquiry, however, is not complete. *Rock* did not address the issue of how and when a criminal defendant may waive his or her right to testify. Wilson, citing the cases of *Johnson v. Zerbst*, 304 U.S. 458

(1938) and *Krueger v. State*, 84 Wis. 2d 272, 267 N.W.2d 602 (1978), asserts that the right to testify, as a fundamental right, cannot be waived unless the defendant, personally on the record, makes a voluntary, knowing, and intelligent waiver. In *Johnson*, a case that among other issues considered waiver of the right to counsel, the United States Supreme Court stated "we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 U.S. at 464.[1] In *Krueger*, the Wisconsin Supreme Court considered whether, based upon the trial and supplemental records, the defendant validly waived his right to a jury trial when defense counsel entered an oral waiver and the defendant remained silent. *Krueger*, 84 Wis. 2d at 274-82, 267 N.W.2d at 603-07. The court concluded that the defendant had indeed waived his right to a jury trial but held "that henceforth a record demonstrating the defendant's willingness and intent to give up the right to be tried by a jury must be established before the waiver is accepted." *Id.* at 282, 267 N.W.2d at 607.[2] To the extent that Wilson argues that *Johnson* and *Krueger*

---

[1] The Court went on to hold: "While an accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." *Johnson*, 304 U.S. at 465.

[2] The court refused to delineate a formal procedure for the making of such a record. *Krueger*, 84 Wis. 2d at 282, 267 N.W.2d at 607. However, the court did indicate one possible way to develop the record was to follow the procedure suggested in *ABA Standards Relating to Trial by Jury*, sec. 1.2(b) (1968), which puts the burden of developing an appropriate record *on the trial court. Id.*

671

mandate that the record support a knowing and voluntary waiver of the defendant's right to testify, we agree.[3]

Our conclusion necessarily leads us to inquire whether the record in the present case reflects a knowing and voluntary waiver by Wilson concerning his right to testify in his defense. Wilson asserts that the record provides no basis for a conclusion that he waived his right to testify. The State counters that the record clearly reflects a knowing and voluntary waiver. We are persuaded that the record presents sufficient evidence that Wilson did indeed waive his right to testify on his own behalf.

At trial, an off-the-record side-bar conference concerning *inter alia*, whether Wilson would testify, was summarized by the trial court as follows:

> I asked Mr. Koenig [defense counsel] if the defendant was going to testify, only because I didn't want to take a break and if the defendant was going to testify I thought we could just go in that sequence, and Mr. Koenig indicated that the defendant wishes to exercise his 5th Amendment right,

---

[3] Wilson asks that we adopt a procedure requiring the trial court to undertake an on-the-record colloquy with the defendant at the close of the defense's case-in-chief concerning his or her right to testify. Because the principles of waiver as set forth in *Albright* were not affected by the Supreme Court's ruling in *Rock*, we refuse to mandate any such requirement. Nonetheless, we recognize the merits of such a practice. As noted by the Florida Supreme Court in *Torres-Arboledo v. State*, 524 S. 2d 403, 411 n.2 (Fla. 1988):

> [I]t would be advisable for the trial court, immediately prior to the close of the defense's case, to make a record inquiry as to whether the defendant understands he has a right to testify and that it is his personal decision, after consultation with counsel, not to take the stand.

672

> which is just fine. I'll give an instruction protecting him on that. The only thing I ask — he can waive that right at any time, it depends on him. Only thing I asked is some indication so I could do calendaring, and I think that accurately reflects the dialog on the record.

The trial court then inquired as to whether Mr. Zeir [the prosecutor] and Mr. Koenig were in accord with the trial court's summary of the side-bar conference. Both answered in the affirmative. Shortly thereafter, the prosecutor noted for the record that "[Wilson] has indicated or Mr. Koenig indicated that his client made the decision not to take the witness stand." Wilson voiced no objection to or disagreement with either of these statements. In accord with *Albright*, 96 Wis. 2d at 133, 291 N.W.2d at 492, Wilson's silence is presumptive evidence of a valid waiver, by his counsel, of his right to testify.

Wilson attempts to rebut the presumption by arguing first, that he was unaware that the ultimate decision to testify rested with him, and second, that the reason he stood silent in the face of counsel's assertion of waiver at trial was because the trial court led him to believe that he could only speak through counsel. We are not persuaded by either assertion.

Koenig, during the postconviction motion hearing, testified that he had discussed the decision regarding Wilson's testifying at trial "many times." Koenig further stated that Wilson had agreed with his advice that it would be unwise to testify. Koenig explained that his decision was tactical because Wilson had "a prior lengthy criminal history." In addition, Koenig testified that Wilson, who has a college degree, is "very intelligent" and was "very helpful" in "deciding what type of defense to present." Furthermore, the trial court noted

that "Wilson was very knowledgeable about the criminal justice system and he has been through many court proceedings. . . . Mr. Wilson gets five stars . . . in assisting his lawyer." Thus, the record supports the conclusion that the matter of Wilson's testifying at trial was fully explained to him by Koenig and that Wilson knew he had the final say in deciding whether to testify or not.

Wilson next argues that he did not state his desire to testify in open court at the time of waiver because the trial court told Wilson not to speak to the court directly, but only through his attorney. Wilson cites the following colloquy between himself and the trial court as support for his contention:

> DEFENDANT:  Can I get to say something?
> THE COURT:  No, you shouldn't talk to me without your lawyer being present.
> DEFENDANT:  He is here.
> THE COURT:  We will pass your case for a few minutes.

Wilson also cites a passage from the postconviction motion hearing:

> Q  So it was your understanding that you weren't to speak out?
>
> A  Yeah, that's my understanding, unless I was spoken to.

These passages do not establish that Wilson was coerced into complete silence by the trial court. In the first passage, the trial court simply indicated that Wilson should not speak to the court without his attorney being present. This statement can only be construed as the trial court acting to protect the legal rights of Wilson. As to the second passage, Wilson's subjective

beliefs are not controlling. Further, whether he felt restrained from directly addressing the court, nonetheless, Wilson certainly could have voiced an objection through his attorney.[4] As testified to by Koenig, Wilson was "not bashful" and there were numerous opportunities for him to "express his concerns."

■

In conclusion, we hold that under the standard set forth in *Albright*, as modified by the Supreme Court's ruling in *Rock*, Wilson knowingly, intelligently, and voluntarily waived his right to testify.

## III.  EXPERT TESTIMONY

Wilson next claims "the trial court erred and violated [his] state and federal rights to due process and to present a defense when it excluded expert testimony on

---

[4] Wilson cites the following passage as an example of his objection to his counsel's decision not to allow him to testify:

> THE COURT:   Sir, are you willing to accept the advice of your lawyer?
> THE DEFENDANT:   No.
> THE COURT:   No?
> THE DEFENDANT:   No.
> MR. KOENIG:   Well, I think that tactical decision is mine.
> THE COURT:   This is the reason I want to know your feelings on it, is that your lawyer isn't twisting your arm, is he, isn't forcing you to do anything, is he?
> THE DEFENDANT:   No, he's not.
> THE COURT:   Allright. Okay. Do you feel comfortable, notwithstanding the position of your client on the record, that we can proceed then without this witness, Mr. Koenig?
> MR. KOENIG:   Yes, Your Honor.

Wilson fails to point out that this discussion did not relate to the decision not to testify, but rather, to the decision of Koenig not to call an alibi witness. The record reveals no exchange similar to this one in reference to Koenig's assertion that Wilson would not take the stand on his own behalf.

eyewitness identification." As a corollary, Wilson also asserts the trial court erroneously exercised its discretion when it prevented defense counsel from making an offer of proof as to the substance of the testimony.

■■■

We recently summarized the relevant law governing admission of expert testimony in *State v. Blair*, 164 Wis. 2d 64, 74-75, 473 N.W.2d 566, 571 (Ct. App. 1991) (citations omitted):

> A trial court's decision to admit or exclude expert testimony is a discretionary determination that is made pursuant to Rule 901.04(1), Stats. The decision will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " A determination of whether a proffered expert witness should be permitted to testify requires an evaluation of whether the testimony will "assist" the jury. Generally, expert testimony will assist the jury when the issue to be decided requires an analysis that would be difficult for the ordinary person in the community.

At the close of the pretrial hearing of October 3, 1991, the State sought to exclude Wilson's proffered expert testimony on eyewitness identification essentially on the ground that the testimony at issue would not assist the jury. In response, Koenig made a non-testimonial offer of proof, stating in relevant part:

> It is my understanding and . . . it is also my presentation to the court that Dr. Walter McDonald who is a psychologist in Racine, who has done work on this, who has testified in other cases, he is going to merely talk about the general aspects as to the reliability of eyewitness identification. He cannot legally focus on or answer questions with regard to

this witness as far as whether she is right or wrong, so I want to just first of all clarify what it is not.

And now some further remarks as to what it is. It is an expert who has worked in this field testifying to general matters about how perceptions are made and so on and it's a general testimony. I have consulted with Mr. McDonald. He is fully aware that he cannot act as any type of a Judge on the credibility of this victim.

. . . .

But now to get to the crux of this. In this particular case, I think the Court should allow it because first of all as I said it is not and cannot be an attack upon the credibilities of this particular witness specifically, but this should be allowed in this particular case because this is a one on one type of identification. The whole crux of the case, the outcome of the case depends upon whether or not [the complainant's] identification is correct or incorrect.

The trial court, in granting the State's motion to exclude the proffered expert testimony, made the following comments:

[Y]ou can't do indirectly what you can't do directly.

And what I am trying to say that though your expert is not going to outright state that this witness may have made a mistake in identification, the thrust of the testimony is to cast doubt on her credibility by indirectly suggesting that she isn't seeing what she's claiming she's seen because of some statistical information procured by the psychologist that tells him that "x" amount of people over "x" period of time have made incorrect identifications.

. . . .

. . . And there is a specific instruction, 141 where identification of the defendant is an issue and those are recognized objective factors that can

be documented and accepted by the masses of people that perception of when you see someone it depends upon the lighting, the mental state of the witness at the time, the physical ability of the witness to see and hear the events and any other circumstances affecting the observation.

. . . .

. . . But to allow your expert to get up here and to expand on [the accuracy of a State's witness] in a greater detail in balancing it is an attack on the credibility of the witness indirectly. It invades the province of the jury. It is prejudicial to the State and unless you can show me that it directly relates to some handicap or disabled witness . . . I will not allow an expert to testify in that area that you have requested . . . .

The trial court's analysis is consistent with the law in Wisconsin concerning expert identification evidence. First, the trial court reasonably concluded that without more, Wilson's proffered testimony concerning the psychology of one-on-one identifications presented nothing outside the realm of ordinary experience and common knowledge. *See Blair,* 164 Wis. 2d at 76-77, 473 N.W.2d at 572 (where this court upheld trial court decision to exclude expert identification testimony because the information was within the common knowledge, sense and perception of the jury). Second, the trial court appropriately recognized that the proffered testimony, without some direct link to the identification issue in the present case, could confuse and mislead the jury. Finally, the trial court's ruling had no adverse effect on Wilson's constitutional rights to due process and com-

pulsory process.[5] Wilson was allowed the opportunity for a pretrial challenge to the admissibility of the complainant's out-of-court identification and received the benefit of a modified instruction on identification evidence, indicating that identification "is one of the most important issues in this case." The trial court did not erroneously exercise its discretion when it excluded expert testimony on eyewitness identification.

Wilson also argues that the trial court denied him the opportunity to make an offer of proof in support of his expert identification testimony. Wilson points to the following colloquy:

> MR. KOENIG:   I think for the record I should also put in —
> THE COURT:   No, you don't get to add now and supplement the record. You had your chance. We've been doing this on the second day. I let you interrupt me once. I let you make your offer of proof. I don't get to be supplemented because I have made my ruling based upon what I have [been] told.

Although it is true that the trial court disallowed Wilson the occasion to supplement his offer of proof, the record clearly indicates that he was given a full opportunity to make an original offer of proof. A trial court does not have to permit an attorney to argue and reargue a position *ad infinitum.* Whether the trial

---

[5] It is well-established that the constitutional right of a criminal defendant to call witnesses in his or her defense is not absolute, but "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973). In the present case, the trial court, in exercising its discretion, concluded that it would be unfair to the State to allow Dr. McDonald to testify.

court's preclusion was an attempt at judicial efficiency or was simply the result of its "having heard enough" is immaterial. The record clearly contained sufficient evidence for the trial court to have rendered its ruling when it did so. Therefore, we conclude that the trial court did not erroneously exercise its discretion in disallowing Koenig to supplement the offer of proof regarding expert identification testimony.

## IV. INEFFECTIVE COUNSEL

Wilson next claims "trial counsel was ineffective when he failed to properly advise Wilson about his right to testify and when he failed to make an adequate offer of proof of expert testimony."

A criminal defendant's right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and by art. I, sec. 7 of the Wisconsin Constitution. The right to counsel exists to protect a defendant's fundamental right to a fair trial and includes the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970); *State v. Ludwig,* 124 Wis. 2d 600, 606, 369 N.W.2d 722, 725 (1985). In considering an ineffective assistance claim, counsel is "strongly presumed" to have rendered adequate assistance. *Strickland v. Washington,* 466 U.S. 668, 690 (1984).

The test is two-pronged: "First, the defendant must show that counsel's performance was deficient . . .. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Both prongs of the test present mixed questions of fact and law. *State v. Pitsch,* 124 Wis. 2d 628, 633-34, 369 N.W.2d 711, 714 (1985). The trial court's findings of

fact will stand unless clearly erroneous. Section 805.17(2), Stats. Once the facts are established, however, whether counsel's performance was deficient and prejudicial are both questions of law. *State v. Marty*, 137 Wis. 2d 352, 356-57, 404 N.W.2d 120, 122 (Ct. App. 1987).

In regard to Wilson's first assertion — that Koenig failed to properly advise him of his right to testify — we previously concluded in Part II of this decision that Koenig did indeed explain to Wilson that he had the right to testify. The record clearly indicates that Wilson and Koenig discussed the possibility of Wilson testifying and that Wilson knew that he had a right to testify. Thus, Wilson's argument that Koenig was deficient in this respect must fail.

Wilson's second assertion — that Koenig failed to make an adequate offer of proof as to the expert testimony — also fails on the first prong of *Strickland*. In Part III above we quoted extensively from the record of Koenig's offer of proof concerning whether Dr. McDonald, an expert in identification testimony, would be allowed to testify on behalf of Wilson. Within those passages Koenig repeatedly stated that Dr. McDonald would testify about "general" psychological factors relating to one-on-one identifications as well as "general matters about how perceptions are made." Koenig clearly indicated why he was attempting to have Dr. McDonald testify. As noted by the trial court at the postconviction motion hearing, "[Koenig] laid out everything in the record, with regard to the expert that he claimed was an expert." Although Koenig was unsuccessful in persuading the trial court to allow Dr. McDonald to testify, Koenig's offer of proof specified

the substance of what Dr. McDonald's testimony would have been. We conclude that Koenig's offer of proof concerning expert identification testimony was not deficient.[6]

## V. LINEUP PROCEDURES

Wilson's final allegation is that "the lineup procedures were impermissibly suggestive, the identification was unreliable and should have been suppressed" and the subsequent "in-court identification was tainted."

■■■■

A criminal defendant is denied due process when identification evidence admitted at trial stems from a pretrial police procedure that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). In Wisconsin, a two-part test is employed. The defendant bears the initial burden of showing that the state-sponsored identification procedure was impermissibly suggestive. *Powell v. State*, 86 Wis. 2d 51, 65, 271 N.W.2d 610, 617 (1978). If impermissible suggestiveness is found in the identification procedure, the burden shifts to the state to show that, despite the infirmity, under the totality of the circumstances, the identification nevertheless was sufficiently reliable to be admitted at trial. *Id.* at 65-66, 271 N.W.2d at 617. On appeal, a question of law is presented, enabling this court to review the matter *de novo. See id.* at 62-68, 271 N.W.2d 615-18. The trial court's findings, however, are accepted as true unless

---

[6] Because neither of Wilson's assertions concerning ineffective assistance of counsel show deficiency on the part of counsel, we need not address whether there was any prejudice to the defense.

clearly erroneous. Section 805.17(2), Stats. Further, in ascertaining witness credibility, "[t]he trial court is the final arbiter." *Marty*, 137 Wis. 2d at 359, 404 N.W.2d at 123.

Applying the above standard to the facts in this case, we conclude that Wilson has not met his initial burden of proving that the lineup was impermissibly suggestive.

On October 28, 1988, two days after the robbery, Grabowski attended a five-man police lineup in which Wilson was Number 3. Wilson testified at a subsequent pretrial suppression hearing that there was a commotion during the lineup when Grabowski blurted out, prior to the door of the screening room being closed, "That's him, that's him. That's Number 5." According to Wilson, Number 5 then panicked, pointed to Wilson and began shouting, "It wasn't me." Wilson testified that the police stopped the lineup, herded the five subjects into the hallway and restarted the lineup. Following the lineup, Wilson was shown the lineup card indicating that he had been picked.

At the suppression hearing, Wilson presented testimony from three of the four other lineup participants, excluding the man who had been in position Number 5. All of the subjects had been inmates of the Milwaukee county jail at the time. These other subjects also said they heard a female voice call out "Number 5," causing the man in that position to become upset and prompting police to stop the lineup and redo it. Two subjects said they heard an officer ask the woman if she was "sure" of her choice after she had called out "Number 5." One subject said an officer told Wilson, "I got you this time."

In stark contrast was the suppression-hearing testimony of two Milwaukee police officers. Officers

Ronald Castillo and Darrell Mischka said they were in the viewing room with Grabowski when the lineup was conducted. Officer Castillo said the doors to the lineup room and viewing room were closed and that the room is "pretty much" sound proof. Both officers testified that Grabowski immediately selected Wilson and that he was Grabowski's only selection. Mischka stated that because Grabowski actually picked out Wilson before he had the opportunity to completely raise the viewing room shade, he encouraged her to view the entire lineup again before making her final decision.

The trial court denied Wilson's motion to suppress the lineup identification, finding no impermissible suggestiveness in the lineup procedures. The trial court concluded that the defense witnesses had not established that the "female voice" they allegedly heard was that of Grabowski and, even if it was, such evidence did not automatically taint the lineup. In conjunction, the trial court found that "the detectives were in a better position to see, know, hear, state and testify as to what . . . occurred" at the lineup. Finally, the trial court found the testimony of the officers to be more credible than that of Wilson or the lineup subjects, noting that one of the subjects had seventeen prior convictions.

The trial court's credibility determinations were not clearly erroneous. All defense witnesses were impeachable by prior records. At the time of the lineup, Wilson had six prior convictions, while prior-conviction totals for the other three lineup subjects were seventeen, four, and one. Both officers testified that they had directed numerous lineups and that they followed strict procedures while conducting them. It should also be noted that Grabowski testified at the suppression

hearing. Her testimony ratified the officers' version of events. She said that she immediately selected Wilson at the lineup, that no one told her that a suspect was in custody, and that no one had influenced her decision. As to the lineup participants themselves, the men were all of similar stature. They were similar in height and weight. Their haircuts were the same "cropped style." Each individual wore a moustache and their skin was similar in tone. Finally, all participants wore orange jump suits. Although Wilson's suit was new, it did not stand out as noticeably brighter than the others. In sum, our review of the record indicates that the lineup was not impermissibly suggestive. Accordingly, this court's analysis need proceed no further. *Powell*, 86 Wis. 2d at 68, 271 N.W.2d at 618.

*By the Court.*—Judgment and order affirmed.

SCHUDSON, J. (*concurring*). I agree with the majority but write separately to add emphasis and further comment on the themes addressed in footnotes 2 and 3 of our decision.

Because the "burden of developing an appropriate record," in my view, is "*on the trial court,*" *see* majority op. at 671 n.2, I conclude that the trial court must undertake an "on-the-record colloquy with the defendant" to assure understanding of the right to testify, *see* majority op. at 672 n.3. With that in mind, however, I also would caution:

(1) On the record means *on the record.* In this case, as in all too many that we review, off-the-record bench or chambers conferences contain the specific facts that emerge in only summary form — and sometimes disputed form — on the record. Although a quick, off-the-record conference may seem efficient and rea-

sonable when a trial court is attempting to maintain the pace and continuity of a trial in the midst of a heavy calendar, it often produces the uncertain record that invites some appeals, and makes other appeals far more difficult to resolve.

(2) The colloquy "with the defendant" need not be elaborate if the trial court has developed an appropriate record through defense counsel. In its brief to this court, the State has cited substantial authority reflecting the concern that a trial court's on-the-record colloquy with a defendant "would unnecessarily intrude into the attorney-client relationship and could unintentionally influence the defendant in his or her choice." *See*, e.g., *United States v. Teague*, 953 F.2d 1525, 1533 n.8 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 127 (1992). By "recogniz[ing] the merits" of a trial court's direct, on-the-record colloquy with a defendant, *see* majority op. at 672 n.3, we do not discount that concern. Thus, an artful trial court may choose to address the defendant directly, in detail, to assure understanding of the right to testify. An equally artful trial court, however, may choose to address defense counsel, in detail, in the presence of the defendant, and then ask the defendant whether he or she understands and agrees with counsel's statements. With either approach, a trial court can assure "an appropriate record" of a defendant's understanding of the right to testify.